## A00A2363. WRIGLEY v. THE STATE.

(546 SE2d 794)

POPE, Presiding Judge.

William H. Wrigley appeals from his conviction on one count of driving without a license on his person and one count of driving under the influence. We affirm.

In the early hours of May 8, 1998, the Motorcycle Squad of the City of Atlanta Police Department set up a roadblock on Buford Highway as a part of "Operation Street Sweep." At around midnight, Wrigley's car stopped at the roadblock, where he was approached by Officer David Curtis Johnson. When Officer Johnson asked Wrigley for his license and insurance card, Wrigley was unable to produce his license and appeared to have difficulty locating his insurance card. Officer Johnson also detected an odor of alcohol on Wrigley and noticed that he had bloodshot eyes, a flushed face, and slurred speech and was unsteady on his feet. Wrigley admitted that he had been drinking.

---

Officer Johnson then asked Officer G. W. Garrison, a member of the DUI countermeasures team, for assistance in administering the field sobriety tests. As a member of the countermeasures team, Officer Garrison had specialized DUI and intoxilyzer training. Officer Garrison also smelled alcohol on Wrigley's person and observed that his eyes were bloodshot and dark and that his speech was impaired. He led Wrigley through the horizontal gaze nystagmus (HGN) test, the nine-step walk and turn test, and the one-leg stand test. Based upon these tests Officer Garrison determined that Wrigley was intoxicated to the extent that he was a less safe driver. Wrigley was placed under arrest.

1. Wrigley first asserts that the trial court erred in denying his motion in limine to exclude all evidence from the roadblock. Wrigley argues that the roadblock was illegal because there was no evidence that the screening officers were properly trained.

The Supreme Court of Georgia has determined that a roadblock is constitutional where it meets the following five factors:

> A roadblock is satisfactory where [(1)] the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; [(2)] all vehicles are stopped as opposed to random vehicle stops; [(3)] the delay to motorists is minimal; [(4)] the roadblock operation is well identified as a police checkpoint; and [(5)] the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

*LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998). These factors are not "absolute criteria" that a roadblock must meet in order to be considered legitimate. *Heimlich v. State*, 231 Ga. App. 662, 663 (500 SE2d 388) (1998). "Rather, this Court looks to the totality of the circumstances surrounding the roadblock to determine whether the factors were satisfied." *Albert v. State*, 236 Ga. App. 146, 148 (1) (511 SE2d 244) (1999).

Here, Wrigley does not dispute that the first four factors were met. But he challenges the fifth factor, the training of the screening officers participating in the roadblock. The evidence showed that Officer Johnson was a ten-year veteran of the Atlanta Police Department. He testified that he had received training in DUI detection at the police academy when he first became a police officer and at several of the annual in-service training sessions he had attended over ten years. In addition, he said that he had "on-the-job training" dealing with intoxicated people, making, on average, one DUI arrest per month, which he calculated to be over 100 arrests over ten years. We

find that this experience and training were more than sufficient to qualify Officer Johnson to screen for motorists who should be given field sobriety tests. *State v. Sherrill*, 247 Ga. App. 708, 711 (545 SE2d 110) (2001); *State v. Golden*, 171 Ga. App. 27, 30 (2) (318 SE2d 693) (1984).

And although no evidence was presented regarding the specific qualifications of the 19 other screening officers participating in the roadblock, the record shows that DUI training for officers in the Atlanta Police Department generally begins in the police academy and continues periodically through the department's annual in-service training program. The record also reflects that each officer was a member of the motorcycle squad, a traffic unit that deals with the driving public. From the evidence presented, we can reasonably infer that the other officers were also sufficiently qualified to serve as screening officers.

Accordingly, viewing the roadblock under the totality of the circumstances, we find no error in the trial court's denial of Wrigley's motion in limine on this ground.

2. Wrigley also asserts that the roadblock was illegal under the U. S. Supreme Court's recent decision holding that checkpoint stops aimed primarily at detecting evidence of ordinary criminal wrongdoing violate the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000). We disagree.

In *Edmond*, the City of Indianapolis set up a series of six roadblocks with the stated purpose of detecting unlawful drug activity. At each checkpoint, officers stopped a predetermined number of vehicles. Each driver was told that he was being stopped at a drug checkpoint and was asked to produce a license and registration card. The officers also looked for signs of impairment and conducted an open-view examination of the vehicle from the outside. The officers then circled each vehicle with a narcotics detection dog. Id., 121 SC at 450-451.

The Supreme Court noted that it had upheld brief, suspicionless seizures at highway checkpoints only for limited purposes, such as combating drunk driving and intercepting illegal immigrants at U. S. borders. *Edmond*, 121 SC at 452, citing *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SC 2481, 110 LE2d 412) (1990), and *United States v. Martinez-Fuerte*, 428 U. S. 543 (96 SC 3074, 49 LE2d 1116) (1976). In addition, the Supreme Court previously has suggested that a roadblock for the purpose of verifying driver's licenses and vehicle registrations would be permissible. Id., citing *Delaware v. Prouse*, 440 U. S. 648, 663 (99 SC 1391, 59 LE2d 660) (1979). In these cases, the Court recognized that the practice of using the checkpoint was directly connected to the important interests of maintaining highway safety and stemming the flow of illegal immigrants through

the country's borders. *Edmond*, 121 SC at 452-453.

But in *Edmond*, the Court found that illegal drug activity did not pose a threat to highway safety similar to that posed by drunk driving and, thus, that the use of a drug checkpoint could not be rationalized in the same terms as a sobriety checkpoint. Id. at 455. Rather, the Court found that the Indianapolis checkpoints were aimed at " 'the general interest in crime control,' " and it declined "to suspend the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes." (Citation omitted.) Id.

Wrigley argues that because the roadblock in this case was part of Operation Street Sweep, it was aimed at general crime control and not intended for any permissible purpose under *Edmond*. Operation Street Sweep was a department-wide operation aimed at cleaning the streets of crime. Officer Johnson testified that in addition to the roadblock, Operation Street Sweep involved "different operations" by the Red Dog Units and the vice and narcotic units, all occurring at the same time. Although it was part of a larger effort, however, the roadblock itself was conducted only by the motorcycle squad, backed up by the DUI countermeasures team. There is no evidence that any other unit participated. And Officer Johnson testified that the primary purpose of the roadblock was checking for driver's licenses and insurance cards. The presence of the DUI countermeasures team also suggests at least a secondary purpose of detecting drunk drivers.

The use of a checkpoint for these purposes has been approved by the Supreme Court, which has acknowledged that these measures serve the states' interest in roadway safety. *Edmond*, 121 SC at 453; *Sitz*, 496 U. S. at 455; *Prouse*, 440 U. S. at 658, 663. Thus, standing alone, the roadblock in this case was proper. And the legitimate purposes of the roadblock were not undercut by the fact that other police units were simultaneously conducting different operations as part of a larger, organized effort. We hold, therefore, that the roadblock in this case met the requirements of the Fourth Amendment.

3. Wrigley next argues that the trial court erred in allowing the state to prosecute him on two counts from two separate accusations without requiring the state to file a motion for joinder.

Following his arrest, Wrigley was issued two uniform traffic citations, charging him with driving without a license and DUI. These citations were numbered 1022853 and 0065849, respectively. On April 21, 1998, the state filed an accusation against Wrigley, containing the same case numbers as the citations.[1] Count 1 of that accusa-

---

[1] Wrigley asserts that the state filed a separate accusation charging only one count of DUI on October 2, 1997, but that accusation does not appear in the record.

tion was entitled Case No. 1022853 and asserted a charge of driving without a license, citing OCGA § 40-5-20. Count 2 of the accusation was entitled Case No. 0065849-2 and asserted the DUI charge. Then on April 28, 1998, the state made another filing setting out Count 1 under Case No. 1022853 and charging Wrigley with driving without a license, citing a different Code section, OCGA § 40-5-29 (a). The original traffic citations were nolle prossed by the state, as was Count 1 of the April 21 accusation. The state proceeded to trial on Count 1 as set forth in the April 28 filing and Count 2 as alleged in the original April 21 accusation.

Wrigley argues that the April 28 filing superseded the prior accusation and because the later filing contained only one count, the state's prosecution should have been limited to that one count. The state argues that the April 28 accusation was an amendment affecting only Count 1 of the prior accusation and leaving Count 2 intact.

Under OCGA § 17-7-71 (f), a prosecutor may amend an accusation at any time prior to trial "to allege or to change the allegations regarding any offense arising out of the same conduct of the defendant which gave rise to any offense alleged or attempted to be alleged in the original accusation." Here, the April 28 filing reflected that it related only to Case No. 1022853 and Count 1 of the prior accusation. And the filing simply changed the Code section cited in Count 1 to assert the same charge asserted against Wrigley in the original citation: driving without a license on his person under OCGA § 40-5-29. Under these circumstances, it is clear that the April 28 filing was simply an amendment to Count 1 and had no effect on Count 2 of the original accusation. Therefore, the trial court did not err in allowing the trial to proceed on the two counts as amended by the April 28 filing, and no motion for joinder was required. Cf. *Vanorsdall v. State*, 241 Ga. App. 871, 873-874 (2) (a) (528 SE2d 312) (2000) (approving an amendment relating to only one count of the original accusation).

4. Wrigley next argues that the trial court erred in allowing Officer Garrison to testify about the specific conclusions he made from each field sobriety test because it gave the tests "the guise of scientific reliability." He asserts that the officer's testimony should have been limited just to a general conclusion as to Wrigley's sobriety, without reference to any specific conclusions drawn from the individual tests. In support of this argument, Wrigley cites this Court's prior holding that evidence of such tests is admissible without requiring expert testimony as to their scientific reliability. *Hawkins v. State*, 223 Ga. App. 34, 39 (1) (476 SE2d 803) (1996). Citing the Court's statement acknowledging that "physical manifestations of impairment" can be as obvious to a layperson as to an expert, he argues that the officer should have stated what happened and let the jury draw its own conclusions. Id. at 36 (1).

We find no merit to this argument. " 'A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether appellant was under the influence to the extent it made him less safe to drive.' " (Citations omitted.) *Tanner v. State*, 225 Ga. App. 702 (484 SE2d 766) (1997). Here, Officer Garrison gave his opinion that Wrigley was intoxicated to the extent that he was a less safe driver. He also testified about the factors he considers in administering each of the three field sobriety tests and about how Wrigley performed in conjunction with those factors. Through this testimony, Officer Garrison simply explained the basis for his conclusion that Wrigley was intoxicated. Nothing in our opinion in *Hawkins* precludes such testimony. Nor do we agree with Wrigley that in explaining the basis for his own conclusion, Officer Garrison somehow invaded the province of the jury.

And to the extent that such evidence represented expert testimony, it was within the trial court's discretion to determine whether Officer Garrison possessed the requisite learning and experience to testify as an expert. See *Werner v. State*, 246 Ga. App. 677, 680 (3) (538 SE2d 168) (2000). The evidence showed that Officer Garrison was specially trained in the area of DUI detection, had made over 1,000 DUI arrests, and had conducted "thousands" of field sobriety evaluations. We find no error.

5. Wrigley also contends that the trial court erred in admitting similar transaction evidence of his prior DUI conviction because he argues that the state did not establish that the evidence was obtained as the result of a lawful traffic stop. He asserts that the state was unable to demonstrate the legality of the stop because the arresting officer could not recall the specific reason for the stop.

As an initial matter, we note that Wrigley does not contest the admission of this similar transaction evidence under *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), and thus we do not address that issue. Rather, he asserts that the evidence was precluded under the Fourth Amendment.

The record shows that Wrigley was arrested for DUI in February 1990 by Officer Kema Sawadee Tillman of the Atlanta Police Department. After following Wrigley and observing that he had difficulty holding his head up, Officer Tillman testified that he stopped Wrigley for a traffic offense. He believed that the offense was an improper lane change, but he was not sure. Officer Tillman testified that he remembered the traffic stop because he admired the red Jaguar that Wrigley was driving. After administering a field sobriety test to Wrigley, Officer Tillman charged him with DUI. Wrigley pled nolo contendere. Wrigley raised no objection to the traffic stop in the prior proceeding and, by pleading nolo contendere, waived any defenses and objections except whether he voluntarily entered the plea and

whether it was accepted after proper inquiry by the trial court. *Wilson v. State*, 240 Ga. App. 681, 682 (523 SE2d 613) (1999). Therefore, Wrigley has waived his right to contest the admission of this similar transaction evidence on the ground that the initial stop was improper.[2]

But even assuming that Wrigley had not waived the right to raise the issue in this proceeding, the evidence would still be admissible. Although Officer Tillman could not remember the details of the stop after so long a time, he testified that he stopped Wrigley only after observing a traffic violation. Once a traffic violation occurred, the officer had grounds to make a traffic stop, precluding any argument that the stop was pretextual:

> The United States Supreme Court has held . . . that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances. See *Whren v. United States*, 517 U. S. [806] (116 SC 1769, 135 LE2d 89) (1996). In other words, if the driver of a stopped car has broken a traffic law, no matter how relatively minor, a motion to suppress evidence can no longer be based on the argument that the stop was pretextual — at least under federal law. [Cits.]

*Brantley v. State*, 226 Ga. App. 872, 873 (1) (487 SE2d 412) (1997).

6. Wrigley further asserts error in the following regarding the HGN test:

> HGN is based on the well-known and medically accepted principle that nystagmus can be caused by the ingestion of alcohol. HGN test is an accepted common procedure that has reached a state of verifiable certainty in the scientific community, and is admissible as a basis upon which an officer can determine that a driver is impaired by alcohol.

Wrigley contends that this charge is improper because it gave the evidence undue weight in the jury's eyes.

But this Court has previously rejected a similar argument. In *Waits v. State*, 232 Ga. App. 357, 360 (3) (501 SE2d 870) (1998), the

---

[2] In addition, Wrigley's nolo contendere plea distinguishes this case from the authority upon which he relies. In each of the cases cited, the prosecution was attempting to introduce evidence of crimes as to which either the defendant had not been charged or the charges were still pending. *United States v. Hill*, 898 F2d 72 (7th Cir. 1990); *United States v. Lego*, 855 F2d 542 (8th Cir. 1988); *United States v. Renteria*, 625 F2d 1279 (5th Cir. 1980).

Court approved substantially the same charge, finding that it did not express any opinion by the trial court, but rather correctly set forth the prior holding in *Hawkins v. State*, 223 Ga. App. at 38 (1). We see no reason to disturb that finding.

And we find that the cases from other jurisdictions cited by Wrigley are factually distinguishable. See *Crawford v. Commonwealth*, 33 Va. App. 431, 432 (534 SE2d 332) (2000) (holding improper a charge stating that " 'DNA testing is deemed to be . . . reliable scientific [evidence in] Virginia when admitted to prove the person's identity' "); *O'Connell v. State*, 17 SW3d 746 (Tex. App. 2000) (disapproving charge instructing the jury that the trial court had taken judicial notice "of the fact that the underlying theory of the Horizontal Gaze Nystagmus (HGN) test is sufficiently reliable" and of the fact that the technique for administering the test is "a reliable indicator of intoxication").

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED MARCH 2, 2001 — ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Chestney-Hawkins Law Firm, Robert W. Chestney*, for appellant.
*Joseph J. Drolet, Solicitor, Katherine Diamandis, Assistant Solicitor*, for appellee.

