A03A1284. HARWOOD v. THE STATE.
A03A1285. McLUCAS v. THE STATE.
(586 SE2d 722)

PHIPPS, Judge.

On March 15, 2002, Andrew John Harwood stopped his car at a police roadblock in Henry County. After a police dog alerted positively for the presence of drugs in the car, the car was searched and marijuana was found inside, as well as on the person of Harwood's passenger, Brandi McLucas. Harwood was charged with DUI of marijuana, and McLucas was charged with possession of marijuana. They moved to suppress the evidence against them, arguing that it resulted from an illegal detention and seizure. After a joint hearing in both cases, the trial court denied their motions. Later, at a stipulated bench trial, the court found both defendants guilty of the charges against them.

In Case No. A03A1284, Harwood appeals the denial of his motion to suppress, and in Case No. A03A1285, McLucas appeals the denial of her motion. Because the appeals present identical issues, we consolidate them. Harwood and McLucas (collectively, defend-

---

ants) argue that the roadblock was unconstitutional and that the police illegally prolonged their detention. Finding no merit in either argument, we affirm.

1. In reviewing a trial court's ruling on a motion to suppress, we accept the court's findings of fact unless they are clearly erroneous, and we construe the evidence most favorably to uphold the court's ruling.[1]

Defendants challenge the constitutionality of the roadblock. A police roadblock satisfies the Fourth Amendment if the following criteria are met: (1) the decision to implement the roadblock was made by supervisory personnel at "the programmatic level," rather than officers in the field, for a legitimate primary purpose; (2) all vehicles, rather than random vehicles, are stopped; (3) the delay to motorists is minimal; (4) the roadblock is well identified as a police checkpoint; and (5) the screening officer has adequate training to make an initial determination as to which motorists should be given field sobriety tests.[2] Defendants argue that the state failed to show that the first and fourth criteria were met here.

(a) With respect to the first criterion, Sergeant Joseph Tammaro, Jr. of the Henry County Police Department testified that he authorized the roadblock in question, as well as several others that morning, for the purpose of ensuring the safe operation of vehicles on the road. He testified that all officers working at the roadblock were trained in "DUI detection," and many were trained in "standardized field sobriety tests." He further stated that he was the supervisor of the department's traffic enforcement unit; that his authority to implement roadblocks came from the department's policy manual and from his supervisor, who had delegated the task to him; and that he (Tammaro) had authorized more than 100 roadblocks since becoming a sergeant. This testimony established that the roadblock was implemented by a supervisory officer for a proper purpose.[3]

Defendants argue, however, that there was no competent evidence that Tammaro was authorized to order the roadblock. They contend that Tammaro's statement that he was given authority to implement roadblocks by his supervisor, who did not testify, was inadmissible hearsay. We note that Tammaro testified that his authority to order roadblocks derived not only from his supervisor's

---

[1] *Huntley v. State*, 244 Ga. App. 212, 213 (1) (535 SE2d 270) (2000).

[2] *Baker v. State*, 252 Ga. App. 695, 701-702 (1) (556 SE2d 892) (2001).

[3] See *Hobbs v. State*, 260 Ga. App. 115, 116-117 (1) (579 SE2d 50) (2003) (evidence that officer who ordered roadblock was a supervisory officer satisfied first criterion for evaluating roadblock's constitutionality); *Buell·v. State*, 254 Ga. App. 456, 457 (562 SE2d 526) (2002) ("checking for safety violations" was permissible purpose for roadblock).

delegation, but also from department policy.[4] And even if Tammaro's statement that his supervisor gave him authority was hearsay, the issue is not *who* delegated authority to Tammaro, but whether he in fact had such authority. His uncontradicted testimony that he was a supervising officer authorized to order roadblocks was sufficient to establish that fact. The state was not required to call his supervisor to verify that authority.[5]

Defendants also argue that Tammaro was not an appropriate official to implement roadblocks because he acted as a field officer as well as a supervisor. Although Tammaro's testimony at the motion hearing suggested that he was present at the roadblock in question, there was no evidence that he screened, searched, or otherwise interacted with any motorists, including defendants. The fact that the officer who ordered the roadblock also attended it does not mean that the roadblock was not implemented at "the programmatic level."[6]

(b) Defendants also argue that the roadblock was not adequately identified as a police checkpoint.[7] The record shows otherwise. Tammaro testified that "[w]e had police cars on each side of the roadway . . . with the blue lights flashing. The officers were in full street uniform with some orange and some chartreuse and blue reflective vests that say 'police' on them." He also testified that the officers had placed "Click-it or Ticket" signs on their parked cars. Given these identifying markers, "[i]t is highly unlikely that a motorist would have taken the activity to be anything other than a police checkpoint."[8] And in fact, neither Harwood nor McLucas testified that they were confused by the roadblock or had trouble identifying it.

Defendants point out that the police did not use orange cones or wear reflective hats, as required by the department's standard oper-

---

[4] See *Ross v. State*, 257 Ga. App. 541, 542 (1) (573 SE2d 402) (2002) (officer's testimony that "Chief of Police policy" authorized him to order roadblocks as a supervisor established that decision to implement roadblock was made at "programmatic level").

[5] Compare *Blackburn v. State*, 256 Ga. App. 800, 801 (570 SE2d 36) (2002) (trooper's hearsay statement that his supervising corporal had authorized roadblock was insufficient to establish that supervising officer authorized roadblock for legitimate purpose); *Baker*, supra (evidence did not establish that decision to implement roadblock was made at supervisory level where officer testified that he did not call for roadblock, but his supervisor did; that he did not know which supervisor implemented roadblock; and that he was not present when decision was made).

[6] See *Hobbs*, supra (evidence showed that police sergeant who implemented roadblock was a supervising officer, even though he stopped defendant at the scene); *Ross*, supra (evidence showed that police lieutenant who implemented roadblock was present at the scene as supervisory officer, not field officer).

[7] Although the state contends that defendants waived this argument by not raising it below, the transcript of the motion hearing shows that defense counsel argued that the roadblock was not properly marked. The trial court, however, never ruled on the issue.

[8] *Perdue v. State*, 256 Ga. App. 765, 769 (1) (c) (578 SE2d 456) (2002) (physical precedent only).

ating procedures. But whether the roadblock complied with departmental policy is not dispositive of the question before us — whether it satisfied the constitution.[9] We find no authority for the proposition that the Fourth Amendment requires that roadblocks be identified with orange cones and that officers working there wear reflective hats.

(c) Finally, defendants claim that the roadblock was an unconstitutional drug checkpoint. They did not raise this argument before the trial court and therefore have waived it.[10] Even if they had not waived the argument, it lacks merit. Tammaro's testimony established that the roadblock had a legitimate primary purpose — vehicle safety checks.[11] The presence of a drug dog used to sniff vehicles suspected of containing narcotics did not invalidate the roadblock.[12]

2. Defendants contend that, even if the roadblock was valid, the police impermissibly prolonged their detention without reasonable suspicion of criminal activity.

Officer Mike Freeman testified that he was a trained canine officer and had his police dog, Falco, at the roadblock. Freeman stated that he was standing "a few feet away" from another police officer, Baker, when Harwood's vehicle stopped at the roadblock. Baker did not testify at the hearing. According to Freeman, however, "[Baker's] the one that actually asked for [Harwood's] license. As soon as he got the license he advised me that he smelled what he believed to be marijuana." Freeman then approached Harwood's car and smelled marijuana himself. He retrieved Falco, who alerted positively on both sides of the car. Freeman then searched the car, discovered marijuana inside, arrested McLucas, and found marijuana on her person. Meanwhile, another officer conducted field sobriety tests on Harwood, who was arrested for DUI.

Defendants told a different story. According to Harwood:

> I pulled up to the road check and I was asked for my license and insurance. I gave [Baker] my license and insurance. He checked it, handed it back to me, told me to have a nice day. I rolled my windows up. I started to pull off and the officer with the K-9 unit [(Freeman)] was to the right of the vehicle and crossed in front of me and came over to the window and knocked on the window.

---

[9] See *State v. Dymond*, 248 Ga. App. 582, 585 (1) (546 SE2d 69) (2001); *State v. Sherrill*, 247 Ga. App. 708, 712 (2) (545 SE2d 110) (2001).
[10] See *Duitsman v. State*, 212 Ga. App. 348, 349 (2) (441 SE2d 888) (1994) (Fourth Amendment objections will not be considered for the first time on appeal).
[11] See *Buell*, supra.
[12] See *Wrigley v. State*, 248 Ga. App. 387, 390 (2) (546 SE2d 794) (2001).

After Harwood rolled the window down, Freeman "stuck his head [inside] and did a little sniffing thing and said, 'I smell marijuana.'" Harwood testified that Baker did not speak to Freeman before Freeman tapped on the window. Like Harwood, McLucas testified that Baker handed Harwood's license and insurance card back to him, told Harwood he could leave, and then proceeded to the car behind him without talking to Freeman.

Defendants claimed that Freeman's testimony that Baker smelled marijuana was inadmissible hearsay. Without that testimony, defendants maintained, the trial court was required to believe their version of events — that Baker had concluded the stop and released them before Freeman approached the car. In reliance on *Faulkner v. State*,[13] defendants argued that the police could not continue to detain them after the purpose of the initial stop had concluded without a reasonable suspicion of other criminal activity. And because the evidence that Baker smelled marijuana was not admissible, the state failed to prove that the police had a reasonable suspicion of other criminal activity.

The trial court rejected defendants' hearsay objection, ruling that Baker's out-of-court statement was admissible as part of the res gestae. The court further found that, contrary to defendants' testimony, Baker had told Freeman that he had smelled marijuana in Harwood's car. Thus, the court concluded that Baker's detection of this odor provided reasonable suspicion justifying defendants' continued detention.

We need not decide whether Baker's out-of-court statement was inadmissible hearsay because other evidence, considered in the light most favorable to the trial court's ruling, supports the denial of the motion to suppress. Freeman testified that "as soon as" Harwood handed Baker his license, Baker spoke to Freeman. And "as soon as" Baker spoke to Freeman, Freeman "walked about three or four feet over" to the car and smelled marijuana. This testimony suggests that the sequence of events occurred rapidly and supports a reasonable inference that, contrary to defendants' assertions, Baker's initial investigation had *not* concluded before Freeman smelled marijuana from within the car. The moment Freeman smelled marijuana, he had a reasonable suspicion that marijuana was in the car, justifying defendants' continued detention.[14] Thus, *Faulkner v. State*[15] does not apply.

---

[13] 256 Ga. App. 129 (567 SE2d 754) (2002).
[14] See *Tomlin v. State*, 242 Ga. App. 405, 407 (530 SE2d 27) (2000); *State v. Folk*, 238 Ga. App. 206, 209 (521 SE2d 194) (1999).
[15] Supra.

*Judgments affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 20, 2003.

*Sexton & Morris, Lee Sexton, Joseph S. Key*, for appellants.
*Charles A. Spahos, Solicitor-General, Gilbert A. Crosby, Assistant Solicitor-General*, for appellee.