## A08A1994. McGLON v. THE STATE.

(673 SE2d 513)

PHIPPS, Judge.

Thomas Patrick McGlon was stopped at a roadblock and subsequently convicted of driving under the influence of alcohol. On appeal, McGlon claims that the trial court erred by denying his motion to suppress evidence obtained at the roadblock. Finding no merit to McGlon's claim, we affirm.

"In ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings are analogous to a jury verdict and will not be disturbed when the record contains any evidence to support those findings."[1] Accordingly, when reviewing a ruling on a motion to suppress, we construe the evidence in a light favorable to the trial court's findings, unless those findings are clearly erroneous.[2]

Viewed in this manner, the evidence shows that on June 9, 2007, Jimmy Motes worked for the White County Sheriff's Office and was the supervisor of the traffic safety unit and the Highway Enforcement of Aggressive Traffic (HEAT) unit. That day, he authorized a roadblock and met with other officers assigned to implement the roadblock to inform them where the roadblock would be located and how long it would last. Motes decided that its primary purpose would be a safety check. All of the officers involved were certified in field sobriety and DUI detection. The roadblock was identified by signs placed in the middle of the road that stated "Sheriff's Checkpoint Ahead," as well as marked patrol cars parked in the area with their blue lights flashing. During the roadblock, all vehicles were stopped for approximately one to two minutes unless a violation was noted. After the roadblock ended, Motes completed a safety checkpoint report, which showed that the roadblock had begun at 8:00 p.m., 50 vehicles were stopped, several DUI arrests were made, and numerous other citations were issued.

David Still worked for the White County Sheriff's Office in June 2007, was assigned to the HEAT unit and assisted with the June 9 roadblock. When McGlon stopped at the roadblock, Still asked him for his driver's license. While talking with McGlon, Still noticed a strong odor of alcohol coming from McGlon's breath and also noticed that McGlon's eyes were bloodshot and watery and his face was flushed. Still asked McGlon how many drinks he had consumed and McGlon responded that he had been drinking only nonalcoholic beer.

---

[1] *Bennett v. State*, 283 Ga. App. 581-582 (642 SE2d 212) (2007) (citation and punctuation omitted).

[2] Id.

Still then asked McGlon to park on the roadside and exit his truck. While getting out of his truck, McGlon lost his balance and used the truck bed for support. Still asked McGlon to perform three field sobriety tests — the horizontal gaze nystagmus, the walk and turn and the one-leg stand. After the tests, Still concluded that McGlon was under the influence of alcohol to the extent he was a less safe driver and placed him under arrest.

Shortly after arresting McGlon, Still administered a breath test with the Intoxilyzer 5000 in a mobile trailer the sheriff's office had at the scene. Still entered information into the machine, including the subject's name, the arresting officer's name, and the violation time and date. Still began the breath test at 8:45 p.m. and obtained two samples, which indicated alcohol concentrations of 0.197 grams and 0.205 grams. After the test was complete, the machine printed a report with the test results and the information entered by Still.

McGlon filed a motion to suppress the evidence obtained during the roadblock, arguing that he was not stopped during the time of an authorized roadblock. After a hearing on the motion, the trial court denied it. The issues on appeal are whether the roadblock was authorized and, if so, whether McGlon was stopped during the time the roadblock was authorized.

The Supreme Court of Georgia has recognized that a roadblock is satisfactory

> where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.[3]

All of those factors were demonstrated in this case. Motes, a supervising officer, made the decision to implement the roadblock. All vehicles were stopped at the roadblock and were delayed only one to two minutes unless a violation was noted. The roadblock was well-identified with signs and marked patrol cars with their lights flashing. And all of the officers involved were sufficiently trained to determine whether a motorist should be given field tests for intoxication.

---

[3] *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998), citing *State v. Golden*, 171 Ga. App. 27, 29-30 (318 SE2d 693) (1984).

In *City of Indianapolis v. Edmond*,[4] the United States Supreme Court held that roadblocks must be established for a valid primary purpose, which must ultimately be distinguishable from the general interest in crime control.[5] A roadblock that serves as a highway safety checkpoint, as the one here did, has a valid primary purpose even if the officers are looking for several different safety violations.[6]

McGlon does not dispute that the state established the factors set forth in *LaFontaine* or a valid primary purpose as required by *Edmond*. Instead, relying on *State v. Morgan*,[7] McGlon claims that the state failed to prove that his stop occurred during an authorized roadblock because the state failed to prove when he was stopped or to show the duration of the roadblock. In *Morgan*, this court held that the roadblock was not established for a valid primary purpose because its purpose was general law enforcement.[8] This court also upheld as not clearly erroneous the trial court's determination that the roadblock was not authorized on the day Morgan was stopped because the authorization form indicated that the roadblock would occur the following day.[9]

Here, Motes testified and the safety checkpoint report reflects that the roadblock was authorized for June 9, 2007, beginning at 8:00 p.m. Motes further testified that the roadblock began at that time. Based on the information entered by Still, the Intoxilyzer report indicates that McGlon committed a violation on June 9, 2007, at 8:17 p.m. Motes testified that the officers were told where the roadblock would be located and how long it would last. Even without evidence establishing the exact ending time for the roadblock, the evidence was sufficient to show that McGlon was stopped 17 minutes after the roadblock began. Thus, the trial court was authorized to find that McGlon was stopped within the time period for which the roadblock was authorized and did not err in denying his motion to suppress.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JANUARY 28, 2009 —
RECONSIDERATION DENIED FEBRUARY 13, 2009

*George H. Law III*, for appellant.

---

[4] 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000).

[5] Id. at 44 (III).

[6] *Kellogg v. State*, 288 Ga. App. 265, 268 (1) (a) (653 SE2d 841) (2007).

[7] 267 Ga. App. 728 (600 SE2d 767) (2004).

[8] Id. at 732.

[9] Id.

*N. Stanley Gunter, District Attorney, Christopher M. Foss, Assistant District Attorney*, for appellee.