## A10A1460. RAPPLEY v. THE STATE.
(702 SE2d 763)

McMURRAY, Senior Appellate Judge.

Following a bench trial, Kristi Ann Rappley was convicted of DUI per se, OCGA § 40-6-391 (a) (5).[1] On appeal, she contends that the trial court erred in denying her motion to suppress because the roadblock at which she was stopped was illegal. We discern no error and affirm.

In ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings will not be disturbed if they are supported by any evidence. See *McGlon v. State*, 296 Ga. App. 77 (673 SE2d 513) (2009). On appeal, we construe the evidence in a light most favorable to the trial court's ruling, and we defer to the trial court's determination on the credibility of witnesses. See *Britt v. State*, 294 Ga. App. 142 (668 SE2d 461) (2008). The trial court's ruling on disputed facts is accepted, unless it is clearly erroneous. Id.

So viewed, the record shows that on May 13, 2009, Lieutenant Sam Rentz and Corporal Michael Wells of the Cherokee County Sheriff's Office decided to implement a roadblock on Interstate 575 at Towne Lake Parkway during the Memorial Day weekend, from May 22, 2009 through May 24, 2009. Lieutenant Rentz was a supervisor in the traffic unit of the sheriff's office, and his duties included the implementation of roadblocks. Corporal Wells also was

---

[1] OCGA § 40-6-391 (a) (5) proscribes that "[a] person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more[.]"

a supervisor in the traffic unit of the sheriff's office and was the commander of the "H.E.A.T." Unit for highway safety. After deciding upon the time and place for the roadblock, Lieutenant Rentz directed Corporal Wells to issue a written order for the roadblock, which provided that its goal was "to establish . . . safety checkpoints to enhance safe travel" and its primary purpose was "to conduct a check of driver's licenses and to identify drivers who [were] under the influence of drugs and/or alcohol." The order also provided instructions for conducting the roadblock. Corporal Wells testified that an internal policy required that a written action plan for the roadblock be approved by the major of field operations and that he had received the major's approval of the plan in accordance with the policy.

On May 24, 2009, the roadblock was conducted from midnight until 3:00 a.m. Lieutenant Rentz was present to supervise the roadblock, and Corporal Wells was also present at the scene. Sheriff's deputies served as screening officers, and Georgia State Patrol troopers provided additional assistance. The roadblock was clearly marked as a law enforcement operation by signs, patrol cars with flashing lights, and uniformed officers at the scene. All vehicles coming through the roadblock were stopped, and the delay to the motorists was minimal. The screening officers had prior training and experience in DUI detection and field sobriety testing.

Rappley's vehicle approached the roadblock at 1:27 a.m. When the screening officer encountered Rappley, he detected the odor of alcohol emanating from her breath. Rappley also appeared to have glassy, bloodshot eyes, and her speech was slurred. Upon being questioned by the officer, Rappley admitted that she was coming from a bar and had consumed a couple of beers. After failing field sobriety evaluations, Rappley was placed under arrest for DUI and was read the implied consent notice under OCGA § 40-5-67.1 (b) (2). She consented to a breath test using the Intoxilyzer testing device, which registered a 0.116 test result.

Rappley was charged with DUI to the extent that it was less safe for her to drive and DUI per se. OCGA § 40-6-391 (a) (1), (5). She filed a motion to suppress the evidence obtained during the roadblock, alleging that the roadblock was illegal. Following an evidentiary hearing, the trial court denied the motion. After a bench trial based upon stipulated evidence, Rappley was convicted of the DUI per se offense.

Rappley contends that the trial court erred in denying her motion to suppress and challenges the court's ruling that the roadblock was lawful.

A police roadblock satisfies constitutional mandates where

(1) the decision to implement the roadblock was made by supervisory personnel at "the programmatic level," rather than officers in the field, for a legitimate primary purpose; (2) all vehicles, rather than random vehicles, are stopped; (3) the delay to motorists is minimal; (4) the roadblock is well identified as a police checkpoint; and (5) the screening officer has adequate training to make an initial determination as to which motorists should be given field sobriety tests.

(Footnote omitted.) *Harwood v. State*, 262 Ga. App. 818, 819 (1) (586 SE2d 722) (2003). See also *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998). Rappley contends that the State's evidence failed to show that the first criterion was met in this case. Specifically, Rappley argues that the evidence failed to show that the roadblock had been properly authorized by a supervisor. She further argues that the evidence failed to show that the roadblock had been implemented for a legitimate primary purpose since a secondary order that designated additional purposes impermissibly expanded upon the roadblock's primary purpose. We find no merit in either argument.

a. Among other requirements for establishing the lawfulness of a roadblock, "the state has the burden of presenting some admissible evidence, testimonial or written, that supervisory officers decided to implement the roadblock, [and] decided when and where to implement it[.]"(Footnote omitted.) *Cook v. State*, 265 Ga. App. 491, 492 (1) (594 SE2d 708) (2004). To satisfy this requirement, the decision to implement the roadblock must be made by supervisory personnel rather than officers in the field. See *Hardin v. State*, 277 Ga. 242, 244 (3) (587 SE2d 634) (2003); *Lutz v. State*, 274 Ga. 71, 74 (3) (548 SE2d 323) (2001); *Laguines v. State*, 289 Ga. App. 105, 106 (656 SE2d 237) (2008). The purpose of this requirement is to prevent "roving patrols in which [field] officers exercise[ ] unfettered discretion to stop drivers" in contravention of constitutional protections against unreasonable seizures. *Thomas v. State*, 277 Ga. App. 88, 90 (625 SE2d 455) (2005). See also *LaFontaine*, 269 Ga. at 253 (3).

Here, both Lieutenant Rentz and Corporal Wells testified that they were supervisors in the traffic unit of the sheriff's office. Lieutenant Rentz further testified that his duties as a supervisor included the implementation of roadblocks. Lieutenant Rentz and Corporal Wells made the decision to implement the roadblock in question, including deciding the time and place for the roadblock. Corporal Wells issued the written order for the roadblock under

Lieutenant Rentz's direction. Based upon this testimony, the trial court was authorized to find that the roadblock had been authorized by supervisory officers at the programmatic level. See *Brent v. State*, 270 Ga. 160, 162 (2) (510 SE2d 14) (1998); *Carson v. State*, 278 Ga. App. 501, 502 (629 SE2d 487) (2006); *Harwood*, 262 Ga. App. at 819-820 (1) (a); *Ross v. State*, 257 Ga. App. 541, 542 (1) (573 SE2d 402) (2002).

Rappley nevertheless contends that the evidence failed to establish that Lieutenant Rentz and Corporal Wells were vested with the authority to order the roadblock. In this regard, Rappley points to Corporal Wells's testimony reflecting that the internal policy of the sheriff's office required that the roadblock's "written action plan" be approved by the major of field operations. The major, however, did not testify at the hearing, and Corporal Wells's testimony that the plan had been approved by the major was inadmissible hearsay. See OCGA § 24-3-1 (a); *Morris v. State*, 265 Ga. App. 186, 188 (593 SE2d 360) (2004) ("hearsay, even if not objected to, proves nothing") (citation omitted).

It is true that the State must introduce probative evidence from the supervising officer who had authorized the roadblock to establish that the roadblock had been duly authorized, and the hearsay testimony of one who was not the decision-maker is insufficient to meet this burden. See *Cook v. State*, 265 Ga. App. at 492-493 (1); *Blackburn v. State*, 256 Ga. App. 800, 801 (570 SE2d 36) (2002). The evidence in this case presented a conflict as to whether the final decision making authority was vested in Lieutenant Rentz or in the major. In contrast to the testimony of Corporal Wells, Lieutenant Rentz's testimony reflected that he was the supervising officer with decision-making authority over the roadblock, and his testimony was sufficient to establish that fact. See *Giacini v. State*, 281 Ga. App. 426, 428 (1) (636 SE2d 145) (2006); *Harwood*, 262 Ga. App. at 820 (1) (a). The trial court was required to resolve the conflicting evidence as to this disputed issue, and in doing so, was authorized to find that Lieutenant Rentz's decision to implement the roadblock was valid. See *McGlon*, 296 Ga. App. at 77; *Bennett v. State*, 283 Ga. App. 581, 582-583 (642 SE2d 212) (2007). As such, the evidence was sufficient to show that the decision to implement the roadblock was made by a supervisory officer, which prevented the field officers from exercising "unfettered discretion" in stopping the drivers. *LaFontaine*, 269 Ga. at 253 (3). See *Hardin*, 277 Ga. at 244 (3); *Lutz*, 274 Ga. at 74 (3); *Harwood*, 262 Ga. App. at 819-820 (1) (a).

b. To establish the lawfulness of the roadblock, the State also has the burden of proving that the supervisory officers had a legitimate primary purpose for the roadblock that was distinguishable from the general interest in crime control. See *LaFontaine*, 269 Ga. at 253 (3);

*McGlon*, 296 Ga. App. at 79; *Harwood*, 262 Ga. App. at 819 (1). Here, Corporal Wells's written order for the roadblock specified that the roadblock's goal was to serve as a traffic safety checkpoint and its primary purpose was to check driver's licenses and to identify DUI drivers. The testimony of Lieutenant Rentz and Corporal Wells confirmed that the roadblock's purpose was as stated in the written order. The purpose set forth in the order "has long been considered a valid purpose for a traffic roadblock." (Citation and punctuation omitted.) *Britt v. State*, 294 Ga. App. 142, 144 (1) (a) (i) (668 SE2d 461) (2008). See also *Giacini*, 281 Ga. App. at 428-429 (1). And, notably, Rappley's DUI check fell within the roadblock's established purpose.

At the motion hearing, however, Rappley introduced into evidence a secondary order that was issued by the Georgia State Patrol for the roadblock. Rappley contends that the secondary order impermissibly expanded the purpose of the roadblock by designating additional purposes and allowed the field officers to exercise unfettered discretion in conducting the roadblock. We disagree.

"In determining whether a roadblock was initiated for a legitimate, primary purpose, . . . the court should look to the testimony of the supervisory officer as to the roadblock's purpose, rather than to the testimony of the field officers." *Britt*, 294 Ga. App. at 143 (1) (a) (i). "[T]he purpose in the minds of the officers in the field . . . is not conclusive on the threshold issue of the supervisor's purpose." *Baker v. State*, 252 Ga. App. 695, 698 (1) (556 SE2d 892) (2001). In this case, it is undisputed that the roadblock in question was implemented by Lieutenant Rentz and Corporal Wells, who were supervisory officers in the Cherokee County Sheriff's Office. The Georgia State Patrol troopers merely served as field officers assisting with the roadblock under Lieutenant Rentz's supervision and command. There was no evidence that the Georgia State Patrol had been authorized to issue the secondary order. Lieutenant Rentz testified that the primary purpose listed in Corporal Wells's written order remained consistent and was not expanded during the roadblock. Based upon the evidence presented, the trial court was authorized to find that the purpose of the roadblock was as stated by Lieutenant Rentz and Corporal Wells, who were the supervisors that implemented it. See *Britt*, 294 Ga. App. at 143-144 (1) (a) (i); *Giacini*, 281 Ga. App. at 429 (1).

But even if we were to accept Rappley's argument that the secondary order expanded upon the primary purposes for the roadblock, such did not require a finding that the roadblock was established as a subterfuge for general law enforcement purposes. The additional purposes set forth in the Georgia State Patrol's secondary order included the performance of routine traffic checks

for insurance, registration, seatbelt compliance, vehicle fitness, and vehicle safety compliance. Significantly, each of the identified purposes has been held to be a legitimate primary purpose. See *Kellogg v. State*, 288 Ga. App. 265, 267-268 (1) (a) (653 SE2d 841) (2007). And, "[a] roadblock that serves as a highway safety checkpoint, as the one here did, has a valid primary purpose even if the officers are looking for several different safety violations." (Footnote omitted.) *McGlon*, 296 Ga. App. at 79. See also *Holowiak v. State*, 295 Ga. App. 474, 475 (2) (672 SE2d 454) (2009); *Kellogg*, 288 Ga. App. at 268 (1) (a).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED OCTOBER 20, 2010.

*Stein & Ward, George A. Stein, Erin H. Gerstenzang*, for appellant.

*David L. Cannon, Jr., Solicitor-General, David M. McElyea, Assistant Solicitor-General*, for appellee.