### A10A1948. OWENS v. THE STATE.
(707 SE2d 584)

ELLINGTON, Chief Judge.

On August 15, 2008, officers with the Georgia State Patrol stopped Virgil Owens at a roadblock and arrested him for driving under the influence of alcohol ("DUI"). Following a bench trial, Owens was convicted of DUI, based upon a violation of OCGA § 40-6-391 (a) (5) (per se). On appeal, Owens claims that the trial court erred by denying his motion to suppress evidence obtained at the roadblock. He also argues that the officers lacked probable cause to arrest him for DUI. Finding no merit to Owens' arguments, we affirm.

1. Owens contends that the trial court erred in finding that the roadblock had been legally initiated and implemented and in denying his motion to suppress based upon such finding.[1] Specifically, he argues that the evidence shows that the roadblock was the result of

---

[1] "In ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings are analogous to a jury verdict and will not be disturbed when the record contains any evidence to support those findings." (Punctuation and footnote omitted.) *McGlon v. State*, 296 Ga. App. 77 (673 SE2d 513) (2009). Further, "when reviewing a ruling on a motion to suppress, we construe the evidence in a light favorable to the trial court's findings[.]" (Footnote

an unauthorized, "on-the-fly" decision made jointly by an alleged supervisor and his field officers and that the roadblock was, essentially, an improper "roving patrol" of officers who illegally stopped and detained motorists.

It is axiomatic that a police officer's stop of a vehicle is a seizure that violates the Fourth Amendment unless it is reasonable. *City of Indianapolis v. Edmond*, 531 U. S. 32, 37 (II), 40 (III) (121 SC 447, 148 LE2d 333) (2000); *Thomas v. State*, 277 Ga. App. 88, 89-90 (625 SE2d 455) (2005). In general, a seizure is unreasonable absent some individualized suspicion of a crime. *City of Indianapolis v. Edmond*, 531 U. S. at 37 (II); *Thomas v. State*, 277 Ga. App. at 89-90. As a result, "roving patrols in which officers exercise[ ] unfettered discretion to stop drivers in the absence of some articulable suspicion" are unconstitutional. (Citation omitted.) *Thomas v. State*, 277 Ga. App. at 90. A limited exception to the rule requiring individualized suspicion, however, allows standardized highway checkpoints or roadblocks that serve legitimate law enforcement objectives and that impose minimal intrusions on the motoring public. *City of Indianapolis v. Edmond*, 531 U. S. at 41-42 (III); *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998).[2]

To justify a traffic stop under this exception, the State must prove that a highway roadblock program "was implemented at the programmatic level[3] for a legitimate primary purpose," that is, that the roadblock was ordered by a supervisor, rather than by officers in the field, and was "implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime."[4] (Citations omitted.) *Hobbs v. State*, 260 Ga. App. 115, 116 (1) (579 SE2d 50) (2003). "Elevating the roadblock decision from the officers in the field to the supervisory level limits the exercise of discretion by the officers in the field." *Thomas v. State*, 277 Ga. App. at 90.

---

omitted.) Id. In contrast, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[2] See *LaFontaine v. State*, 269 Ga. at 253 (3) ("Roadblock stops have appreciably less intrusion on the part of travelers and do not create the fear and surprise engendered in motorists by roving patrol stops because the motorist is not singled out; the traveler is reassured when all vehicles are stopped.") (citation omitted).

[3] Georgia's courts have not yet precisely defined what it means for a decision to be made at the "programmatic level." See *Jacobs v. State*, 308 Ga. App. 117, 119, n. 6 (706 SE2d 737) (2011).

[4] See *City of Indianapolis v. Edmond*, 531 U. S. at 48 (III) (Courts' inquiry into the purpose of a police checkpoint or roadblock "is to be conducted only at the programmatic level"; therefore, courts should not "probe the minds of individual officers acting at the scene" to determine whether the purpose of the roadblock was legitimate.).

In addition, the State must prove that

> all vehicles [were] stopped as opposed to random vehicle stops; the delay to motorists [was] minimal; the roadblock operation [was] well identified as a police checkpoint; and the screening officer's training and experience [was] sufficient to qualify him [or her] to make an initial determination as to which motorists should be given field tests for intoxication.

(Citation and punctuation omitted.) *LaFontaine v. State*, 269 Ga. at 253 (3). "[T]he factors in *LaFontaine* are not general guidelines but are minimum constitutional prerequisites with which perfunctory compliance will not suffice." (Citation, punctuation and footnote omitted.) *Thomas v. State*, 277 Ga. App. at 90.

In this case, the only witnesses who testified at the motion to suppress hearing were the supervisor who initiated and supervised the roadblock and the officer who screened Owens at the roadblock and eventually arrested him. Following the hearing, the trial court made the following findings of fact:

> The order for the roadblock was issued by Sergeant Michael C. Johnson post commander of Post 7 of the Georgia State Patrol, Toccoa, Georgia. . . . Sgt. Johnson is in fact the commanding officer for the field officers at his Post and his duties include "Initiating road-checks[.]"[5] . . . Sgt. Johnson initiated the roadblock verbally and the decision was made by him alone.[6] . . . Sgt. Johnson [then] supervised the roadblock.[7]

---

[5] See *Jacobs v. State*, 308 Ga. App. at 120 (The supervisor's testimony that "she was expressly authorized to plan and implement roadblocks, which was uncontradicted, [was] sufficient to establish that fact, regardless of whether this delegation of authority was memorialized in a written manual or policy.") (footnote omitted); *Rappley v. State*, 306 Ga. App. 531, 534 (a) (702 SE2d 763) (2010) (The testimony of an officer that he was a supervising officer with decision-making authority to implement a roadblock at a particular time and place, even though contradicted, was sufficient to establish that fact.); *Harwood v. State*, 262 Ga. App. 818, 819-820 (1) (a) (586 SE2d 722) (2003) (The uncontradicted testimony of an officer that he was a supervising officer with decision-making authority to implement a roadblock was sufficient to establish that fact, regardless of the State's failure to call the officer's supervisor to verify that authority, even though the officer's statement that his supervisor gave him authority was hearsay.).

[6] The court added that the arresting officer testified that Sgt. Johnson instructed him to "patrol aggressively" until Sgt. Johnson notified him of the roadblock locations.

[7] See *Giacini v. State*, 281 Ga. App. 426, 428 (1) (636 SE2d 145) (2006) (The mere fact that the deciding officer was present at the scene of the roadblock did not deprive him of "supervisory" status, because he was present in a supervisory capacity.); *Harwood v. State*, 262 Ga. App. at 820 (1) (a) ("[T]he fact that the officer who order[s] [a] roadblock also attend[s] it

The court also found that, when Sgt. Johnson verbally initiated the roadblock on August 15, 2008, he called into the radio operator to report the roadblock. The roadblock approval form, which was admitted into evidence without objection, stated the reasons for the roadblock on August 15, 2008, and the court found that the information on the form did not conflict with any evidence presented as to when the roadblock was to be conducted or by whom it was authorized.[8] The evidence presented during the hearing on the motion to suppress supports these findings of fact.

Contrary to Owens' contentions, there is no evidence in this case that Sgt. Johnson spontaneously decided in the field to conduct the roadblock or that the roadblock had any other characteristic of a "roving patrol."[9] Instead, given the evidence presented, the trial court was authorized to conclude that Sgt. Johnson properly initiated, authorized, and supervised the roadblock and that his decision to implement the roadblock was made at the programmatic level for a legitimate primary purpose.[10]

---

does not mean that the roadblock was not implemented at the programmatic level.") (punctuation and footnote omitted); *Perdue v. State*, 256 Ga. App. 765, 768, n. 15 (578 SE2d 456) (2002) (physical precedent only) (Although "[a]llowing an officer in the field, of whatever rank, to decide the time and location of checkpoints seems to have the same potential for abuse as did the much-maligned roving-patrol," "[n]o dichotomy [between decisions made by field officers and those made by supervisory officers] exists when a supervisor in advance decides on the time and location [for a roadblock] and then goes to the scene to oversee the field officers.") (citation omitted); see also *Gonzalez v. State*, 289 Ga. App. 549, 551 (657 SE2d 617) (2008) (A roadblock was implemented by a supervisor even though the deciding officer testified that, while his primary duty at the location was to oversee the roadblock, he did occasionally step in and participate when traffic backed up.); *Hobbs v. State*, 260 Ga. App. at 117 (1) (A roadblock was implemented by a supervisor even though the deciding officer personally stopped the defendant's car at the roadblock, where the officer testified that he went to the location as a supervising officer and that he took no direct role except when his subordinate officers were busy working with other motorists.).

[8] Cf. *State v. Morgan*, 267 Ga. App. 728, 732 (600 SE2d 767) (2004) (The defendant was stopped by officers at a roadblock on April 18, 2002, but the roadblock authorization form signed by the officers' supervisor showed that the officers were only authorized to perform the roadblock on April 19. The form conflicted with an officer's testimony that the roadblock was authorized for two days, April 18 and 19. Given that it was undisputed that the document in question was the applicable authorization form, the trial court was authorized to disbelieve any contradictory evidence regarding the authorized time for the roadblock. Thus, the trial court's finding that the roadblock was not authorized for April 18 was not clearly erroneous.).

[9] See *LaFontaine v. State*, 269 Ga. at 253 (3) (The trial court did not err in denying the defendant's motion to suppress evidence resulting from a roadblock where there was "no evidence of unfettered discretion by the [officers who screened the motorists,]" no evidence that any officer whimsically or arbitrarily singled out the defendant's vehicle, and no showing that the roadblock was arbitrary or oppressive to motorists.).

[10] See *Jacobs v. State*, 308 Ga. App. at 120 (A roadblock was implemented at the programmatic level for a legitimate primary purpose because the supervisor decided to set up the roadblock to carry out the directive of her superior officers to conduct road safety checks at a prescribed frequency.); *Britt v. State*, 294 Ga. App. 142, 143-145 (1) (a) (i), (ii) (668 SE2d 461) (2008) (A roadblock was implemented at the programmatic level for a legitimate primary purpose because the evidence showed that the roadblock was established by supervisory

2. Owens contends that the trial court erred in finding that his detention by the officers was not excessive under the circumstances or otherwise illegal and in denying his motion to suppress based upon such finding. We disagree.

> When a violator is placed in custody or under arrest at a traffic stop, the protection of *Miranda*[11] arises. Thus, if an officer gives a field sobriety test to a person who is in custody or under arrest but who had not been warned of his right against self-incrimination, then the test results are inadmissible. Conversely, if the person is not in custody when he takes a field sobriety test, the results are generally admissible[,] even if the person had not been warned of his *Miranda* rights. The test to determine whether a detainee is in custody for *Miranda* purposes is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. The safeguards prescribed by *Miranda* become applicable only after a detainee's freedom of action is curtailed to a degree associated with formal arrest. The rationale behind the holding is that although an ordinary traffic stop curtails the freedom of

---

personnel, as opposed to officers in the field, and that its purpose was to perform a driver's license and sobriety check.); *Gonzalez v. State*, 289 Ga. App. at 550-551 (A roadblock was implemented at the programmatic level where the deciding officer was authorized to implement the roadblock pursuant to a policy promulgated by the police chief's office.); *Bennett v. State*, 283 Ga. App. 581, 582-583 (642 SE2d 212) (2007) (A roadblock was implemented for a legitimate primary purpose because the evidence showed that the roadblock was established by an authorized supervisor and that its purpose was to check for potential seatbelt infractions and DUI offenders, both of which are permissible purposes for a roadblock.); *Wright v. State*, 283 Ga. App. 393, 394 (641 SE2d 605) (2007) (A roadblock was implemented for a legitimate primary purpose because the evidence showed that the roadblock was established by an authorized supervisor and that its purpose was to check for driver's licenses, proof of insurance, seat belt violations, driver impairment and vehicle safety compliance.); *Giacini v. State*, 281 Ga. App. at 428 (1) (A roadblock was implemented at the programmatic level where the deciding officer testified that he was authorized to implement the roadblock pursuant to department policy.); *Harwood v. State*, 262 Ga. App. at 820 (1) (a) (A roadblock was implemented at the programmatic level where the deciding officer was authorized to order the roadblock pursuant to the department's policy manual and where that officer's supervisor had delegated the task to him.); *Ross v. State*, 257 Ga. App. 541, 542 (1) (573 SE2d 402) (2002) (An officer's testimony that "Chief of Police policy" authorized him as a supervisor to order roadblocks established that the decision to implement a roadblock was made at the programmatic level.); cf. *Thomas v. State*, 277 Ga. App. at 90-92 (The trial court erred in denying the defendant's motion to suppress evidence resulting from a roadblock where the evidence showed that a senior patrol officer, who supervised his shift, met with his subordinates while already on patrol and decided spontaneously to set up a roadblock and where the evidence showed that the deciding officer did not rely on any specific authority or department policy for implementing roadblocks, did not seek approval from his commanding officer before immediately implementing the roadblock, and actively participated in all aspects of the roadblock, as did the other field officers.).

[11] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights. The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.

(Citations and punctuation omitted.) *Thomas v. State*, 294 Ga. App. 108, 110 (1) (668 SE2d 540) (2008).

As the trial court in this case found, the arresting officer

detained [Owens] for [20] minutes after the initial portable breath test to conduct an additional test. The reason given by the arresting officer was that [Owens] admitted he had something to drink recently and there could be residual mouth alcohol. Not until after the [20] minute wait and after the second portable breath test was possible was [Owens] placed under arrest. . . . The [20] minute delay was for the benefit of [Owens] to insure that the portable alcohol test was not affected by residual alcohol due to [Owens'] recent consumption of alcoholic beverages.

These findings of fact are supported by evidence in the record. Further, there was no evidence that Owens was handcuffed or otherwise restrained while he waited near the back of his vehicle during the brief detention.

We conclude that, under the circumstances presented, "a reasonable person could conclude that his freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed." (Citation and punctuation omitted.) *Thomas v. State*, 294 Ga. App. at 111 (1). Thus, the trial court was authorized to conclude that the brief detention of Owens was neither unreasonable nor illegal, and the court did not err in denying Owens' motion to suppress on this basis. See id. at 110-111 (1) (Because the officer who stopped the defendant was transporting another suspect, he had to call a dispatcher and ask for assistance. The officer informed the defendant that another officer was on the way to conduct the DUI investigation, so it was clear that the detention would be temporary. While waiting, the defendant was neither handcuffed nor placed into a patrol car, although the officer did have possession of the defendant's keys and driver's license. There was no evidence, however, of any unnecessary delay or lack of diligence by the officers. Under these circumstances, the trial court properly found that the defen-

dant was not under arrest until after he performed the field sobriety tests and, as a result, did not err in denying the motion to suppress).[12]

3. Owens contends that the trial court erred in finding that the arresting officer had probable cause to arrest him for DUI. Although Owens obliquely referred to this issue in his motion to suppress, he failed to raise and argue the issue during the motion to suppress hearing. He also failed to assert it in a supplemental brief on his motion to suppress that he submitted to the trial court several months after the motion hearing. Consequently, Owens failed to elicit a ruling on the issue by the trial court. Under these circumstances, Owens has abandoned this alleged error. See *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection . . . which were not raised and determined in the trial court.") (footnote omitted).

*Judgment affirmed. Andrews and Doyle, JJ., concur.*

DECIDED MARCH 10, 2011 — 

*Sean A. Black*, for appellant.
*Dan T. Pressley, Sr., Solicitor-General*, for appellee.

---

[12] See also *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (Although there was a delay of up to an hour between the traffic stop and the DUI investigation, while the officer who conducted the stop waited for a DUI task force officer to arrive, the delay did not convert the investigation into a custodial situation when the evidence showed that the defendant was informed of the reason for the delay, he was not handcuffed or placed in a patrol car, and he was allowed to walk around. Under such circumstances, a reasonable person could conclude that the detention was temporary and that a final determination of his status was simply delayed.).