## A00A2325. THE STATE v. DYMOND.

(546 SE2d 69)

ELLINGTON, Judge.

The trial court granted Julie Anne Dymond's motion to suppress, and, subsequently, under OCGA § 17-7-170 (b), it also granted Dymond's motion for discharge and acquittal of her pending DUI charge. In so doing, the trial court found that the State failed to timely try the case in compliance with Dymond's demand for a speedy trial. In this appeal, the State contests the rulings on both motions. Because the trial court misconstrued and overlooked the applicable law, we reverse.

The underlying case arose from a single misdemeanor DUI charge against Dymond. The evidence shows that at 1:30 a.m. on July 8, 1999, DeKalb County law enforcement officers stopped Dymond at a traffic checkpoint and, ultimately, cited her for DUI. The State filed a single-count accusation on September 22, 1999, charging Dymond under OCGA § 40-6-391 (a) (1) with driving under the influence of alcohol to the extent it was less safe for her to drive. On October 5,

---

1999, Dymond filed a motion to suppress, contending that the roadblock was unlawful and that all evidence obtained therefrom should be suppressed. Dymond argued that the traffic stop was pretextual, arbitrary, unreasonable, and violative of her federal and state constitutional rights to due process and equal protection. Asserting that an illegal search and seizure had occurred, Dymond sought the exclusion of all evidence. See OCGA § 17-5-30. Two months later, on December 7, 1999, Dymond filed a speedy trial demand.

On March 27, 2000, before the start of the scheduled trial, the court considered Dymond's motion to suppress. To attempt to satisfy its burden of establishing the propriety of the roadblock at issue, the State offered the testimony of Sergeant Mester. Mester, a unit supervisor of the Strategic Traffic Accident Reduction ("STAR") team testified that the placement of the roadblock or safety checkpoint had been his decision, executed at all times under the direct supervision of his superior, Lieutenant Mosley, the on-duty watch commander. Mester testified that between midnight and approximately 3:18 a.m., he and other members of his STAR team stopped every vehicle traveling in one direction on Chamblee Tucker Road, including taxis and MARTA buses. Mester explained that he lacked sufficient manpower to stop all traffic in both directions. The checkpoint was delineated by police vehicles using flashing blue lights, large green reflective signs advising "safety check ahead," and orange traffic cones. In addition, uncontradicted testimony indicated that the selection of the site was based on the occurrence of prior accidents and DUI arrests in that area.

According to Mester, the purpose of the safety checkpoint was "to identify impaired drivers and to get them off the road if they are impaired." Mester testified that the members of the STAR team had completed special training in the detection of impaired drivers. He noted that the officers also verified that drivers had valid driver's licenses and that most checks lasted less than 30 seconds. Mester testified that Lt. Mosley, the precinct commander, not only had been present during the operation but also had participated in it. During the three-hour period, the STAR team arrested Dymond and three other drivers for DUI. No one was arrested on any charge other than DUI.

In contesting the legality of the procedure, Dymond contended that since the roadblock was a sobriety checkpoint, the State had to prove the effectiveness of the roadblock in deterring drunk driving through the collection and maintenance of statistics. Dymond also argued that the roadblock was unlawful because the STAR team did not comply with certain written protocol in DeKalb County's employee handbook for traffic law enforcement. Section (h) of the hand-

book provides:

> (1) A [DUI] roadblock will only be used when a specific need or public concern can be documented. For instance, a D.U.I. roadblock could only be established at locations which can be shown to have a higher than normal incidence of D.U.I. arrests or a higher D.U.I. accident rate. (2) Precinct Commanders authorizing roadblocks for the purpose of D.U.I. enforcement will document the need and supporting data for a roadblock at a specific location. Subsequent enforcement data (i.e., number of arrests, tickets) will be maintained and stored with the authorization at the precinct. This information will be maintained for a period of one year.

Mester, however, identified the handbook at issue as an employee manual and testified that it did not set forth "our standard operating procedure." No testimony showed otherwise.

Dymond asserted that the State failed to offer statistical or empirical data to prove the legality of the roadblock. When Mester was asked on cross-examination, "[a]nd in choosing this location, isn't it true that you did not use any type of known statistics for this area being a particularly problematic area for DUI drivers," Mester conceded he did not have specific numbers. Later, when asked if he had selected the site, "without the availability to you of any statistics about DUI arrests and accidents at that location," Mester responded, "I — like I said, I didn't have statistics, but I know there was [sic] lots of wrecks in that area and DUI arrests."

In granting Dymond's motion to suppress, the trial court relied upon guidelines appearing in the employee handbook. The trial court decided: "[s]ince there were guidelines in place for the roadblock for purposes of checking for DUI drivers and those guidelines were not met, this Court concludes that the roadblock was not reasonable under the circumstances in this case." The trial court also found the roadblock violated the Georgia Constitution.

1. The State contends that the trial court erred in granting Dymond's motion to suppress by incorrectly relying upon nonbinding provisions in a county employee handbook instead of following the applicable law of this State. We agree.

When reviewing a ruling on a motion to suppress, if the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, we do not defer to the trial court's legal analysis or its application of law to undisputed facts. *State v. Stearns*, 240 Ga. App. 806, 807 (524 SE2d 554) (1999). Rulings involving solely legal issues are reviewed de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

In examining the propriety of roadblock stops, the issue is not whether there was probable cause to stop the vehicle, but whether

the roadblock stop was "otherwise implemented and conducted in a manner as to demonstrate that the stop of the vehicle was 'reasonable' under the Fourth Amendment. [Cits.]" *LaFontaine v. State*, 269 Ga. 251, 252 (3) (497 SE2d 367) (1998). When there is evidence of unfettered discretion by field troopers, a showing that the roadblock was arbitrary or oppressive to motorists or indications that field officers created an arbitrary scheme to single out a motorist, routine traffic checks may fail to pass constitutional muster. Id. at 253 (3).

On the other hand,

> [a] roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the screening officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

(Citation omitted.) *Brent v. State*, 270 Ga. 160, 161-162 (2) (510 SE2d 14) (1998). Since the roadblock at issue in this case comported with the five-factor test adopted in *LaFontaine* and *Brent*, the detention and subsequent arrest of Dymond were not unconstitutional. *Brent v. State*, 270 Ga. at 162 (2).

The trial court, however, implemented a different legal standard for judging the legality of roadblocks. In finding the roadblock unlawful, the trial court scrutinized it under the provisions of an employee handbook. But Dymond cites no authority and we know of none which requires consideration of that handbook in deciding the propriety of the roadblock. The trial court's ruling was error.

2. The State contends that the trial court erred in granting Dymond's motion for discharge and acquittal because the trial court granted Dymond's motion to suppress and the State had a statutory right to appeal the ruling.

A defendant who has made a proper demand for a trial is entitled to an automatic discharge without further motion if he is not tried on the second term of court, provided that a jury is present at each term and is qualified to try him. *Parker v. State*, 135 Ga. App. 620, 621 (3) (218 SE2d 324) (1975). However, a defendant may waive his right to automatic discharge and acquittal by some action on his part or on the part of his counsel. Id. at 621 (4). "Any affirmative action" by a defendant which results in a continuance of the case or a failure to try it within the time fixed by statute after the filing of a speedy trial demand under OCGA § 17-7-170 has the effect of tolling

the time. *Letbedder v. State*, 129 Ga. App. 196, 197, n. 1 (199 SE2d 270) (1973).

In *State v. Waters*, 170 Ga. App. 505, 508 (3) (317 SE2d 614) (1984), this Court held:

> Thus, by taking "affirmative action" on the issue of admissibility of certain evidence against him, a defendant who files a motion to suppress must be deemed to invoke the entire procedure applicable to that issue including the State's right to a direct appeal if the motion should be granted. In other words, by filing a motion to suppress, a defendant effectively consents to a delay of his trial pending final resolution of the issue of evidentiary admissibility, if the motion is granted and the State elects to have that appellate determination made.

See also *State v. Smalley*, 138 Ga. App. 747 (1) (227 SE2d 488) (1976) (OCGA § 5-7-2 authorizes the State to file a direct appeal from the grant of a motion to suppress).

Dymond's speedy trial demand was filed during the October 1999 term of court, and the call of the case to trial was timely. Under OCGA § 17-7-170, a trial should have begun no later than March 31, 2000. But, on March 27, 2000, the trial court orally granted Dymond's motion to suppress. Although a written order to that effect was not entered until April 14, two weeks beyond the end of the term, by *filing* the motion, Dymond consented to a delay of her trial pending final resolution of the admissibility issue, including the period needed to complete the appellate process. See *State v. Waters*, 170 Ga. App. at 508 (3); see also *Fletcher v. State*, 213 Ga. App. 401, 402 (1) (445 SE2d 279) (1994). Clearly, Dymond would have been tried in compliance with her demand for a speedy trial *but for* her own action of filing a motion to suppress, the grant of which triggered the ensuing delay. See *Letbedder v. State*, 129 Ga. App. at 197 (1); see also *Jackson v. State*, 172 Ga. App. 359, 360 (1) (323 SE2d 198) (1984).

Citing *Ballew v. State*, 211 Ga. App. 672, 673 (440 SE2d 76) (1994), Dymond argues that since the order granting her motion to suppress was filed outside the expiration of the second term of court, she was entitled as a matter of law to discharge and acquittal. See *Ringo v. State*, 219 Ga. App. 753, 754 (466 SE2d 660) (1996) (motion hearing argued after second term of court), overruled in part, *Price v. State*, 245 Ga. App. 128, 134 (2) (b) (535 SE2d 766) (2000). But *Ballew* neither authorizes nor requires that result. In *Ballew*, unlike here, the trial court denied the motion to suppress, and no tolling of the time requirements of OCGA § 17-7-170 occurred. Id. at 673. Therefore, the State's failure to timely try Ballew was not attribut-

able to a grant of a motion to suppress and the ensuing time for appeal.

We reject Dymond's argument that the State must be held responsible for the delay by the trial court in entering its order. After the trial court made an oral pronouncement that the roadblock was unlawful, both defense counsel and the State sought clarification of the legal basis of the court's ruling, and the prosecutor voiced the State's intent to appeal. The prosecutor asked, "[m]ay I ask the Court to place on the record how this stop violated [OCGA §] 17-5-30[?]" The trial court complied, noting "any evidence obtained as a result of the roadblock would by its very nature be improperly seized." Then, this colloquy occurred:

> DEFENSE COUNSEL: Does the Court want either of us to draft that or do you want to have your staff draft it? How do you want to proceed on that?
> PROSECUTOR: I'd prefer the Court do it. I don't think that we will ever agree with it if you leave it to us.
> THE COURT: What the Court will do is just ask the court reporter to transcribe the court's pronouncement and prepare the order from that.

The prosecutor then inquired, "[y]our Honor, the case is continued pending appeal?"[1] The trial court responded affirmatively. The proceeding concluded with the trial court stating,

> [t]he Court will make a concerted effort to have the order — there's one other order in another case that the Court needs to prepare for the State's announcement of its intention to appeal. So the Court will place that as well as this on its priority list for completion by the end of this week.

Although the week ended on Friday, March 31, the order was not entered until April 14, 2000. The State filed its notice of appeal on May 10, 2000. On June 30, 2000, the trial court granted Dymond's motion for discharge and acquittal under OCGA § 17-7-170. In its order, the trial court noted:

> At the end of the hearing on Defendant's Motion to Suppress, the Court granted the motion. When Defense counsel volunteered to prepare the written order of the Court's rul-

---

[1] It appears that the prosecutor was merely seeking clarification that the case was, in effect, halted pending the resolution of the State's appeal. See *Fletcher v. State*, 213 Ga. App. at 403 (1) (demand statute applies to " 'outright dereliction by the State in failing to provide a speedy trial where one could have been had' ").

ing, the State's attorney objected and requested that the Court prepare the Order and asked that the case be continued for ten days pending the State's filing of the Notice of Appeal. The Order was prepared and filed by the Court on April 14, 2000. The State filed its Notice of Appeal on May 10, 2000.

In granting Dymond's motion for discharge and acquittal, the trial court observed, "[i]t is evident that any delay that occurred in this case was not the fault of Defendant." But consideration of fault or blame begs the question of whether OCGA § 17-7-170 was tolled by Dymond's filing of a motion to suppress and the trial court's unequivocal oral pronouncement that the motion was granted. By filing the motion to suppress which elicited the favorable ruling, Dymond invoked the "entire procedure applicable to that issue including the State's right to a direct appeal." *State v. Waters*, 170 Ga. App. at 508 (3). The trial court erred in granting Dymond's motion for discharge and acquittal.

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 28, 2001 —
RECONSIDERATION DENIED MARCH 14, 2001 — 

*Gwendolyn R. Keyes, Solicitor, Lawrence A. Silverman, Thomas E. Csider, Assistant Solicitors*, for appellant.
*William C. Head*, for appellee.