A02A0402. PERDUE v. THE STATE.
(578 SE2d 456)

MIKELL, Judge.

Following a bench trial, David Perdue was found guilty of driving under the influence of alcohol to the extent it was less safe for him to drive, a violation of OCGA § 40-6-391 (a). Perdue was acquitted of driving with an alcohol concentration of 0.08 grams or more pursuant to OCGA § 40-6-391 (a) (5). On appeal, Perdue argues that the trial court erred in denying his motion to suppress on the ground that the roadblock which led to his arrest was unconstitutional. We disagree and affirm.

In reviewing a trial court's denial of a motion to suppress, "the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings of the disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them."[1]

---

[1] (Citation omitted.) *Vaughn v. State*, 243 Ga. App. 816, 817 (1) (534 SE2d 513) (2000).

1. In *LaFontaine v. State*,[2] our Supreme Court determined that a police roadblock is constitutional, providing that

> [(1)] the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; [(2)] all vehicles are stopped as opposed to random vehicle stops; [(3)] the delay to motorists is minimal; [(4)] the road-block operation is well identified as a police checkpoint; and [(5)] the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.[3]

Perdue challenges the trial court's findings with respect to the first, second, and fourth prongs of this test.

(a) Perdue asserts that the roadblock violated the first requirement of *LaFontaine* because the decision to implement the roadblock was made by Sergeant Miniatis, who was a field officer and "not a proper supervisory officer." Sergeant Miniatis testified that he is the supervisor of the DUI Task Force for the City of Atlanta; that the Chief of Police has authorized him to order roadblocks; that he ordered the roadblock for the intersection of Castlegate and West Paces Ferry Roads for the early morning hours of May 4, 2001; that none of the officers under his supervision were involved in the decision to set it up at that intersection; and that he focused on that intersection because it had previously proven to be a good location to detect impaired drivers.

Sergeant Miniatis is apparently a field officer and a supervisor. He accompanies the rest of the DUI Task Force into the field on patrol and, while on patrol, decides whether to have a roadblock, and when and where to have it. Sergeant Miniatis testified as follows:

> Q. Does your office, your department have printed standard operating procedures as to who, when and where and how roadblocks are established?
> A. We've got a standard operating procedure. But yes, when you call a roadblock, it's up to the discretion of the supervisor.
> Q. And you are that supervisor?
> A. That's correct. . . .

---

[2] 269 Ga. 251 (497 SE2d 367) (1998).

[3] Id. at 253 (3). In accordance with *City of Indianapolis v. Edmond*, 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000), the state also must show that the supervisory officers who made the decision to implement the checkpoint had a "legitimate primary purpose" for doing so. *Baker v. State*, 252 Ga. App. 695 (556 SE2d 892) (2001).

Q. So as I understand it, and you correct me if I'm wrong, if it's in the City of Atlanta . . . you can put that roadblock up?
A. That's correct.
Q. And you're not given any limitations as long as it's within the City of Atlanta; is that correct?
A. That's correct. . . .
Q. Do you have like a printed protocol, standard operating procedure?
A. No. . . . So if I think it's a good night to do a roadblock, I'll hold a roadblock. Some nights may go without any roadblocks. It just depends.

The dichotomy between decisions made by field officers and those made by supervisory officers apparently entered into Fourth Amendment jurisprudence in the decision of the United States Supreme Court in *United States v. Martinez-Fuerte*.[4] That decision approved brief stops of vehicles, at fixed checkpoints without probable cause or articulable suspicion, under circumstances which would not justify a roving-patrol stop. As explained by Justice Powell, writing for the majority:

The location of a fixed checkpoint is not chosen by officers in the field, but by officials responsible for making overall decisions as to the most effective allocation of limited enforcement resources. We may assume that such officials will be unlikely to locate a checkpoint where it bears arbitrarily or oppressively on motorists as a class. And since field officers may stop only those cars passing the checkpoint, there is less room for abusive or harassing stops of individuals than there was in the case of roving-patrol stops.[5]

"Roving-patrol stops," in the absence of probable cause or articulable suspicion, had been criticized by several prior decisions as being excessively intrusive.[6] They were expressly disallowed in *Delaware v. Prouse*.[7] However, *Delaware v. Prouse* stated that states might develop "methods for spot checks . . . that do not involve the unconstrained exercise of discretion."[8] Constraining discretion was perhaps the reason that Georgia decisions following *Delaware* and *Martinez-*

---

[4] 428 U. S. 543 (96 SC 3074, 49 LE2d 1116) (1976).
[5] Id. at 559 (IV) (B).
[6] See generally *United States v. Morrison*, 429 U. S. 1 (97 SC 24, 50 LE2d 1) (1976); *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975); *United States v. Ortiz*, 422 U. S. 891 (95 SC 2585, 45 LE2d 623) (1975).
[7] 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979).
[8] Id. at 663 (VII).

*Fuerte* approved roadblocks when the decision to implement the roadblock had been made by "supervisory personnel rather than by the officers in the field."[9] *LaFontaine*, the leading case in Georgia, reiterated this language from *Golden* when articulating the factors to be considered in determining whether a roadblock is lawful.[10] In our recent full-bench decision, *Baker v. State*, we held that the criteria listed in *LaFontaine* were not general guidelines but were "minim[al] constitutional prerequisites."[11]

But something seems to have been lost in translation between Justice Powell's suggestion in *Martinez-Fuerte* and present Georgia constitutional prerequisites. Justice Powell expressed approval of roadblocks whose location was "not chosen by officers in the field" but was chosen, presumably in advance, by officials who were not in the field. Instead, several Georgia precedents approve roadblocks whose location was chosen by field officers so long as those field officers were, in the words of *Golden*, "supervisory personnel,"[12] or the decision of the field officers was approved by a supervisor,[13] or the location was chosen by field officers after a supervisor decided that a roadblock would occur.[14]

If we were deciding the case at bar based only on the guidance given by Justice Powell, we might well be inclined to disapprove of the roadblock at which Perdue's vehicle was halted. Allowing an officer in the field, of whatever rank, to decide the time and location of checkpoints seems to have the same potential for abuse as did the much-maligned roving-patrol.[15] But we now have the additional guidance of Georgia precedents, which are binding on us even if we would have decided the matter differently.[16] In *LaFontaine*, "the determination as to the location of the roadblock was made by the field officers."[17] In the case at bar, Sergeant Miniatis decided on the location (and the time) of the roadblock. The discretion of this field officer was fettered only by the necessity to conduct the activity somewhere in the City of Atlanta. But *LaFontaine* is binding precedent and therefore we must decide against Perdue on this enumeration of error.

---

[9] *State v. Golden*, 171 Ga. App. 27, 29 (2) (318 SE2d 693) (1984).

[10] 269 Ga. at 253. See also *Brent v. State*, 270 Ga. 160 (510 SE2d 14) (1998).

[11] 252 Ga. App. at 701.

[12] See, e.g., *State v. Dymond*, 248 Ga. App. 582 (546 SE2d 69) (2001).

[13] See, e.g., *Evans v. State*, 190 Ga. App. 856 (380 SE2d 332) (1989).

[14] *LaFontaine*, supra.

[15] No dichotomy exists when a supervisor in advance decides on the time and location and then goes to the scene to oversee the field officers. See, e.g., *Brent v. State*, supra.

[16] See, e.g., *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002).

[17] 269 Ga. at 252 (3).

(b) Perdue next contends that the evidence fails to support the trial court's finding that all vehicles passing the intersection were stopped. We disagree. The arresting officer, Michael Centola, testified that every vehicle was stopped and that every driver was asked to produce a driver's license and proof of insurance. Officer Centola also testified that as long as the driver displayed no signs of impairment, he or she was detained for only ten to twenty seconds. Moreover, he testified that in addition to himself, three other officers stopped vehicles while Sergeant Miniatis supervised the roadblock; and that only one lane of traffic was being stopped.

Perdue testified that not every vehicle was detained and claimed that a videotape which had been introduced into evidence corroborated his testimony. The videotape was made for the purpose of showing Perdue's interaction with Officer Centola; it depicts Perdue's performance on various field sobriety tests, among other things. The videotape does not, however, depict the actual roadblock itself. Perdue argues that because several cars can be seen proceeding on West Paces Ferry Road less than ten seconds apart, the officers must not have stopped every vehicle. Of course, this can also be explained by several officers stopping cars simultaneously. In any event, this Court neither weighs the evidence nor determines witness credibility; rather, we defer to the trial court's factfinding unless it is clearly erroneous.[18] Perdue has failed to show clear error.

(c) Finally, Perdue contends that the roadblock was not well defined as a police checkpoint. It is true that Sergeant Miniatis did not use the signs, which he had in the trunk of his vehicle, to alert traffic to a checkpoint ahead. But Officer Centola testified that the checkpoint was identified by police cars, flashing blue lights, officers in uniform wearing reflective vests, and orange cones. These indicators have been held sufficient to identify a roadblock.[19] It is highly unlikely that a motorist would have taken the activity to be anything other than a police checkpoint.

(d) In addition, Perdue argues that the roadblock was invalid because the state failed to show that the decision to implement it was based on statistical or empirical data or established departmental guidelines. This point was not precisely raised by the enumerations of error, although it may have been encompassed by an assertion in an enumeration that the decision of Sergeant Miniatis was "arbitrary." In any event the point is controlled adversely to him by *State v. Dymond*.[20]

---

[18] *Bellamy v. State*, 243 Ga. App. 575, 577 (1) (b) (530 SE2d 243) (2000).

[19] *Brent v. State*, supra at 162 (2).

[20] 248 Ga. App. 582.

2. In his final enumeration of error, Perdue asserts that the trial court erred in admitting evidence of his breath test results because Officer Centola failed to honor his request for an independent test of his own choosing. However, the trial court acquitted Perdue of the DUI charge based on his blood alcohol level, rendering any alleged error in the admission of the test results harmless.[21] Moreover, when the judge sits as the trier of fact, it is presumed that the court considered only legally admissible evidence, unless it appears from the judgment that the judge relied upon evidence which should have been excluded.[22] In this case, it is apparent from the judgment that in finding Perdue guilty of the less safe driver charge, the trial court relied on relevant, admissible evidence, including Officer Centola's testimony that Perdue admitted consuming alcoholic beverages, had red, glassy eyes, a strong odor of alcohol on his breath and person, was very unsteady on his feet, was "thick tongued" with a "pasty mouth," and did not stop at the roadblock until repeatedly admonished to do so. There is no support in the record for Perdue's contention that the trial court was improperly influenced by the results of Perdue's breath test. Accordingly, this enumeration is meritless.

*Judgment affirmed. Phipps, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED APRIL 3, 2002 —
RECONSIDERATION DENIED JULY 29, 2002

*Head, Thomas, Webb & Willis, William C. Head,* for appellant.
*Joseph J. Drolet, Solicitor-General, Gerald Mason, Assistant Solicitor-General,* for appellee.

---

[21] *Ayers v. City of Atlanta*, 221 Ga. App. 381, 382 (2) (471 SE2d 240) (1996).
[22] *Schaffer v. City of Marietta*, 220 Ga. App. 382, 384 (2) (469 SE2d 479) (1996).