## A11A0107. JACOBS v. THE STATE.

(706 SE2d 737)

ELLINGTON, Chief Judge.

Following a bench trial, the State Court of Fayette County found Lee Jacobs guilty of driving while having an alcohol concentration of 0.08 grams or more (DUI per se), OCGA § 40-6-391 (a) (5). Jacobs appeals, contending that the undisputed facts established that he was stopped at a highway roadblock that was implemented by a field officer, rather than by a supervisor at the programmatic level, and, therefore, that the trial court erred in denying his motion to suppress evidence obtained as a result of that roadblock.[1] Finding no error, we affirm.

It is axiomatic that stopping a vehicle is a seizure that violates the Fourth Amendment unless it is reasonable. *City of Indianapolis v. Edmond,* 531 U. S. 32, 37 (II), 40 (III) (121 SC 447, 148 LE2d 33) (2000); *Thomas v. State,* 277 Ga. App. 88, 89-90 (625 SE2d 455) (2005). In general, a seizure is unreasonable absent some individualized suspicion of a crime. *City of Indianapolis v. Edmond,* 531 U. S. at 37 (II); *Thomas v. State,* 277 Ga. App. at 89-90. As a result, "roving patrols in which officers exercise[ ] unfettered discretion to stop drivers in the absence of some articulable suspicion" are unconstitutional. (Citation omitted.) *Thomas v. State,* 277 Ga. App. at 90. A limited exception to the rule requiring individualized suspicion, however, allows standardized highway checkpoints or roadblocks that serve legitimate law enforcement objectives and that impose minimal intrusions on the motoring public. *City of Indianapolis v. Edmond,* 531 U. S. at 41-42 (III); *LaFontaine v. State,* 269 Ga. 251, 253 (3) (497 SE2d 367) (1998).[2]

To justify a stop under this exception, the State must prove that a highway roadblock program "was implemented at the programmatic level for a legitimate primary purpose,"[3] that is, that the roadblock was ordered by a supervisor rather than by officers in the field and was "implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering gen-

---

[1] When the evidence adduced at a hearing on a motion to suppress is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. *State v. Tousley,* 271 Ga. App. 874 (611 SE2d 139) (2005).

[2] See *LaFontaine v. State,* 269 Ga. 251, 253 (3) (497 SE2d 367) (1998) ("Roadblock stops have appreciably less intrusion on the part of travelers and do not create the fear and surprise engendered in motorists by roving patrol stops because the motorist is not singled out; the traveler is reassured when all vehicles are stopped.") (citation omitted).

[3] See *City of Indianapolis v. Edmond,* 531 U. S. at 48 (III) (Courts' inquiry into the purpose of a police checkpoint or roadblock "is to be conducted only at the programmatic level"; courts should not "probe the minds of individual officers acting at the scene" to determine whether the purpose of the roadblock was legitimate.).

eral evidence of ordinary crime." (Citations omitted.) *Hobbs v. State*, 260 Ga. App. 115, 116 (1) (579 SE2d 50) (2003).[4] "Elevating the roadblock decision from the officers in the field to the supervisory level limits the exercise of discretion by the officers in the field." *Thomas v. State*, 277 Ga. App. at 90.

In addition, the State must prove that

> all vehicles [were] stopped as opposed to random vehicle stops; the delay to motorists [was] minimal; the roadblock operation [was] well identified as a police checkpoint; and the screening officer's training and experience [was] suffi-cient to qualify him [or her] to make an initial determina-tion as to which motorists should be given field tests for intoxication.

(Citation and punctuation omitted.) *LaFontaine v. State*, 269 Ga. at 253 (3). "[T]he factors in *LaFontaine* are not general guidelines but are minimum constitutional prerequisites with which perfunctory compliance will not suffice." (Citation, punctuation and footnote omitted.) *Thomas v. State*, 277 Ga. App. at 90.

In this case, Jacobs focuses on the dichotomy between field officers and supervisory officers, contending that the officer who implemented the roadblock that led to his DUI arrest was a field officer because she "solely worked in the field." In addition, Jacobs contends that the officer's plan to conduct that specific roadblock was not approved in advance by a superior officer at a programmatic level and that the authority to order a roadblock had not been delegated to her, either explicitly by the chief of police or other administrative officer or implicitly through a department manual or formal policy.

The only witness at the hearing on Jacobs' motion to suppress was Officer Crawshaw, who held the rank of captain in the uni-formed division of the Fayetteville Police Department. Crawshaw testified that she decided, before going out on the road at the beginning of the shift, to conduct a roadblock beginning at 1:00 a.m. on July 25, 2009, on Georgia Highway 54 at Cobblestone Boulevard. As a captain, Crawshaw was the senior officer in the field, charged with supervising a shift that consisted of herself, a lieutenant, and at least five officers. Above Crawshaw in the chain of command were one of four majors and the chief of police, who decided the policies

---

[4] See also *United States v. Sczubelek*, 402 F3d 175, 201-202 (3d Cir. 2005) ("[N]ever once in over two hundred years of history has the Supreme Court [of the United States] approved a suspicionless search designed to produce ordinary evidence of criminal wrongdoing for use by the police.") (citation and punctuation omitted).

within the departments. The Fayetteville police chief established departmental uniform goals, pursuant to which each shift would conduct a certain number of road safety checks per quarter. Before July 25, 2009, Crawshaw discussed the uniform goals generally, along with the prescribed procedure for conducting a roadblock, with the chief and the majors. As a shift supervisor, Crawshaw was authorized by her superiors to plan and implement roadblocks. Although she obtained some input from her subordinates, Crawshaw did not obtain prior approval, either written or verbal, from her superiors of her plan to have a roadblock on July 25, 2009.

Crawshaw was present to supervise the roadblock and did not interact with motorists when the flow of traffic was light. When traffic was backed up, however, she stepped in to assist her subordinates. As a result, Crawshaw was the officer who approached Jacobs' window and asked for his driver's license and proof of insurance. She immediately smelled alcohol on Jacobs' breath, told Jacobs to pull off to the side of the road, and directed a subordinate officer to conduct a DUI investigation. As a result of the investigation, the subordinate officer arrested Jacobs for DUI.

Applying controlling precedents, we conclude that Crawshaw was a supervisor by virtue of the fact that her rank and job duties required her to supervise the work of a number of officers of subordinate rank, even though she supervised those subordinates in the field, rather than from behind a desk, and even though she initially screened Jacobs at the roadblock.[5] Turning to whether the State proved that the roadblock was implemented at the programmatic level for a legitimate primary purpose, we note that our courts have not precisely defined what it means for a decision to be made at the programmatic level.[6] We conclude, however, that Crawshaw's

---

[5] See *Gonzalez v. State*, 289 Ga. App. 549, 551 (657 SE2d 617) (2008) (A roadblock was implemented by a supervisor even though the deciding officer testified that, while his primary duty at the location was to oversee the roadblock, he did occasionally step in and participate when traffic backed up.); *Giacini v. State*, 281 Ga. App. 426, 428 (1) (636 SE2d 145) (2006) (The mere fact that the deciding officer was present at the scene of the roadblock did not deprive him of "supervisory" status, because he was present in a supervisory capacity.); *Hobbs v. State*, 260 Ga. App. at 117 (1) (A roadblock was implemented by a supervisor even though the deciding officer personally stopped the defendant's car at the roadblock, where the officer testified that he went to the location as a supervising officer and that he took no direct role except when his subordinate officers were tied up with other motorists.); see also *Perdue v. State*, 256 Ga. App. 765, 768, n. 15 (578 SE2d 456) (2002) (physical precedent only) (Although "[a]llowing an officer in the field, of whatever rank, to decide the time and location of checkpoints seems to have the same potential for abuse as did the much-maligned roving-patrol," "[n]o dichotomy [between decisions made by field officers and those made by supervisory officers] exists when a supervisor in advance decides on the time and location [for a roadblock] and then goes to the scene to oversee the field officers.") (citation omitted).

[6] See, e.g., *Giacini v. State*, 281 Ga. App. at 427-428 (describing the phrase "at the programmatic level" that originated in *City of Indianapolis v. Edmond* as "enigmatic"); *Baker*

decision to implement the particular roadblock that resulted in Jacobs' arrest was made at the programmatic level for a legitimate primary purpose because she decided to set up the roadblock to carry out the directive of her superior officers to conduct road safety checks at a prescribed frequency.[7] Her testimony that she was expressly authorized to plan and implement roadblocks, which was uncontradicted, is sufficient to establish that fact, regardless of whether this delegation of authority was memorialized in a written manual or policy.[8] Further, "the fact that the officer who order[s] [a] roadblock also attend[s] it does not mean that the roadblock was not implemented at the programmatic level." (Punctuation and footnote omitted.) *Harwood v. State*, 262 Ga. App. 818, 820 (1) (a) (586 SE2d 722) (2003). There is no evidence that Crawshaw spontaneously decided in the field to conduct the roadblock or that the roadblock had any other characteristic of a roving patrol.[9] Thus, Jacobs' argument that he was stopped at a highway roadblock that was implemented by a field officer, rather than by a supervisor at the programmatic level, lacks merit. *Britt v. State*, 294 Ga. App. 142, 143 (1) (a) (ii) (668 SE2d 461) (2008); *Gonzalez v. State*, 289 Ga. App. at 551; *Giacini v. State*, 281 Ga. App. at 427-428; *Harwood v. State*, 262 Ga. App. at 820.[10] Because Jacobs raises no argument with regard to

---

*v. State*, 252 Ga. App. 695, 701-702 (1) (556 SE2d 892) (2001) (describing *City of Indianapolis v. Edmond*'s explanation of "an inquiry into purpose at the programmatic level" as "Delphic").

[7] See *Gonzalez v. State*, 289 Ga. App. 549, 550-551 (657 SE2d 617) (2008) (A roadblock was implemented at the programmatic level where the deciding officer was authorized to implement the roadblock pursuant to a policy promulgated by the police chief's office.); *Giacini v. State*, 281 Ga. App. at 428 (1) (A roadblock was implemented at the programmatic level where the deciding officer testified that he was authorized to implement the roadblock pursuant to department policy.); *Harwood v. State*, 262 Ga. App. 818, 820 (1) (a) (586 SE2d 722) (2003) (A roadblock was implemented at the programmatic level where the deciding officer was authorized to order the roadblock pursuant to the department's policy manual and where that officer's supervisor had delegated the task to him.); *Ross v. State*, 257 Ga. App. 541, 542 (1) (573 SE2d 402) (2002) (An officer's testimony that "Chief of Police policy" authorized him as a supervisor to order roadblocks established that the decision to implement a roadblock was made at the programmatic level.).

[8] See *Rappley v. State*, 306 Ga. App. 531 (702 SE2d 763) (2010) (The testimony of an officer that he was a supervising officer with decision-making authority to implement a roadblock at a particular time and place, even though contradicted, was sufficient to establish that fact.); *Harwood v. State*, 262 Ga. App. at 819-820 (1) (a) (The uncontradicted testimony of an officer that he was a supervising officer with decision making authority to implement a roadblock was sufficient to establish that fact, regardless of the State's failure to call the officer's supervisor to verify that authority, even though the officer's statement that his supervisor gave him authority was hearsay.).

[9] *LaFontaine v. State*, 269 Ga. at 253 (3) (The trial court did not err in denying the defendant's motion to suppress evidence resulting from a roadblock where there was "no evidence of unfettered discretion by the [officers who screened the motorists,]" no evidence that any officer whimsically or arbitrarily singled out the defendant's vehicle, and no showing that the roadblock was arbitrary or oppressive to motorists.).

[10] Cf. *Thomas v. State*, 277 Ga. App. at 90-92 (The trial court erred in denying the

any of the other factors that are relevant to whether a roadblock was reasonable under the Fourth Amendment, we affirm the trial court's order denying Jacobs' motion to suppress.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED FEBRUARY 28, 2011.

*Cook & Lundy, B. Thomas Cook, Jr.*, for appellant.

*Jamie K. Inagawa, Solicitor-General, Joseph B. Myers, Jr., Assistant Solicitor-General*, for appellee.

defendant's motion to suppress evidence resulting from a roadblock where the evidence showed that a senior patrol officer, who supervised his shift, met with his subordinates while already on patrol and decided spontaneously to set up a roadblock and where the evidence showed that the deciding officer did not rely on any specific authority or department policy for implementing roadblocks, did not seek approval from his commanding officer before immediately implementing the roadblock, and actively participated in all aspects of the roadblock as did the other field officers.).