## A11A2257. THE STATE v. BROWN.
(726 SE2d 654)

BOGGS, Judge.

The State appeals from the trial court's grant of Douglas Wayne Brown's motion to suppress evidence obtained as a result of a roadblock. For the following reasons, we reverse.

"When reviewing a ruling on a motion to suppress, if the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, we do not defer to the trial court's legal analysis or its application of law to undisputed facts. Rulings involving solely legal issues are reviewed de novo." (Citations omitted.) *State v. Dymond*, 248 Ga. App. 582, 584 (1) (546 SE2d 69) (2001). The trial court here found the following facts:

> On April 9, 2010, the Defendant was arrested by officers of the Cobb County Police Department, charged with various offenses, and ultimately indicted for VGCSA, DUI, two counts of Obstruction of an Officer and attempted removal of a weapon from a Peace Officer.
>
> . . .
>
> A few days prior to that date, although no evidence of the exact date was presented, Captain Charles Cox of the Cobb

---

[7] (Footnotes and emphasis omitted.) Id. at 38-39 (2).

County Police Department, who was precinct commander of Zone 4 in Cobb County, sent an email to all precinct 4 officers in response to a "citizens traffic complaint" he had received. The complaint referenced speeding, racing and littering on Groover Road. Captain Cox's email instructed all precinct 4 officers to handle the complaint. No further instructions were given.

. . .

On April 9, 2010, Sgt. Mar[ch]etta of the Cobb County Police Department made a decision in response to the e-mail sent by Captain Cox several days earlier, to set up a traffic safety check point, or roadblock. He testified that he did this acting as the supervisor implementing the checkpoint.

. . .

Only two officers participated in the checkpoint, Sgt. Mar[ch]etta and Officer David Smith.

. . .

The Officers activated their blue lights, wore vests and marked the checkpoint with cones. Every car was to be stopped for purposes of enhancing roadway safety. Both Sgt. Mar[ch]etta and Officer Smith were acting as screeners of drivers.

. . .

The Defendant approached the roadblock at approximately 7:05 p.m. Officer Smith, acting as [a] screener, made the initial contact after directing Defendant to stop his vehicle. Officer Smith smelled marijuana coming from the car, and observed a large folding knife clipped to Defendant's pants. Defendant was removed from the vehicle and immediately became combative with both officers. Considerable effort from both officers was necessary to restrain him, and put him on the ground. Defendant was arrested and charged with various offenses, including possession of marijuana, which was found following a subsequent search of the vehicle.

In granting Brown's motion to suppress, the trial court found that although Sergeant Marchetta was authorized to implement a check-point as a supervisor, no evidence was presented that the roadblock was planned in advance to occur at a specific time. In conjunction with this finding, the court concluded that Marchetta made the decision while acting as an officer in the field. The court found further that the roadblock was not sufficiently manned because Marchetta "should not act as a screening officer, the investigating officer and the chase-vehicle officer."

The State argues on appeal that the legal requirements for the roadblock set forth in *LaFontaine v. State*, 269 Ga. 251 (497 SE2d 367) (1998), were met and that therefore the trial court should have denied Brown's motion to suppress.

> In examining the propriety of roadblock stops, the issue for resolution is not whether there was probable cause to stop the vehicle, but whether the roadblock stop was otherwise implemented and conducted in a manner as to demonstrate that the stop of the vehicle was "reasonable" under the Fourth Amendment.

(Citations omitted.) Id. at 252 (3). To justify a roadblock that serves legitimate law enforcement objectives,

> the State must prove that a highway roadblock program was implemented at the programmatic level for a legitimate primary purpose, that is, that the roadblock was ordered by a supervisor, rather than by officers in the field, and was implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime.

(Citations, punctuation and footnotes omitted.) *Owens v. State*, 308 Ga. App. 374, 375 (1) (707 SE2d 584) (2011). The minimum constitutional prerequisites for a roadblock are outlined by the Supreme Court of Georgia in *LaFontaine*, supra, 269 Ga. at 253 (3):

> A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the "screening" officer's training and experience is sufficient to qualify him to make an initial

determination as to which motorists should be given field tests for intoxication. [Cit.]

The purpose of these requirements is to ensure that individuals are not subject to arbitrary or oppressive invasions solely at the unfettered discretion of officers in the field. Id.

In this case, the trial court based its invalidation of the roadblock upon two specifically articulated bases, which allegedly violate the requirements set forth in *LaFontaine*. First, the court held that the State failed to prove the decision to implement the checkpoint was made by supervisory personnel rather than by officers in the field; and secondly, the trial court concluded that the roadblock was not sufficiently manned.[1] Neither of these reasons withstands scrutiny.

1. With regard to the first ground, and based upon a cursory reading of Paragraph 7 of the trial court's order, the trial court clearly based its decision that Marchetta was acting as an officer in the field, only in conjunction with and reliance upon the e-mail Marchetta

---

[1] Paragraph 7 of the order granting the motion to suppress states as follows:

The Court finds that the implementation of the roadblock was illegal and failed to adhere to the requirements as set forth in *LaFontaine v. The State*, 269 Ga. 251, 1998, for several reasons.

First, the State failed to prove that the decision to implement the checkpoint was made by supervisory personnel rather than by officers in the field. The e-mail from the precinct commander which initiated the response simply instructed all precinct officers to handle the complaint. No checkpoint was ordered and no instructions were given.

Although Sgt. Mar[ch]etta, as a supervisor, was authorized to implement a checkpoint, the Court finds, from the evidence presented, that he made the decision while acting as an officer in the field and that no evidence was presented that it was planned in advance to occur at a specific time.

Additionally, the roadblock was not sufficiently manned to allow supervision of screening officers. Sgt. Mar[ch]etta testified that he was acting as checkpoint supervisor, as screener, as follow up investigator of motorists whom the screeners had developed articulable suspicion or probable cause to detain, and as the back up officer needed to initiate traffic stops of motorists who violate state law or refuse to stop at the checkpoint. Adequate manpower is required by law to implement a checkpoint because it is necessary to safely and efficiently conduct the checkpoint. The checkpoint supervisor should not act as a screening officer, the investigation officer and the chase-vehicle officer. The facts of this case illustrate very clearly why the standards and procedures set forth in the Cobb County Police Department Policy 519 regarding Traffic Safety Checkpoints which are based on sound case law are required to be adhered to by the police. The problems that developed following the stop of this Defendant's car illustrate the importance of following the requirements as set forth in *LaFontaine v. The State*. Two officers is not and was not adequate manpower. This roadblock was not sufficiently manned, as required by *LaFontaine v. The State*.

Therefore, as Defendant was stopped without any reasonable articulable suspicion of criminal activity or probable cause, and the roadblock was illegal, Defendant's Motion to Suppress is GRANTED.

received from his precinct commander a few days prior to the implementation of the roadblock. Indeed, the trial court concluded that "[t]he e-mail from the precinct commander which initiated the response simply instructed all precinct officers to handle the complaint. No checkpoint was ordered and no instructions were given." It is clear that in reaching this decision, the trial court relied heavily upon a specific factual finding that "no evidence was presented that it was planned in advance to occur at a specific time." This factual finding is belied by the record. The record reveals without dispute that Marchetta decided to implement the roadblock two days before and even sent another officer to survey the road before implementing it.

Moreover, while it appears that the *reason* for Marchetta's decision originated with his captain, the *decision* to implement the roadblock was made by Marchetta, a supervisor who, as even the trial court concedes, had the authority to do so. See, e.g., *Jacobs v. State*, 308 Ga. App. 117, 120 (706 SE2d 737) (2011) (officer's testimony that she was authorized to plan and implement roadblocks was sufficient to establish that fact); *Gonzalez v. State*, 289 Ga. App. 549, 551 (657 SE2d 617) (2008) (roadblock valid where uncontradicted testimony established that sergeant alone made decision to implement roadblock and evidence showed he had authority to do so; fact that sergeant participated in roadblock did not transform him from a supervisor into a field officer); *Bennett v. State*, 283 Ga. App. 581, 583 (642 SE2d 212) (2007) (pre-planned checkpoint not transformed into roving patrol because lieutenant testified that implementation of roadblock would depend upon number of officers available to support it); compare *Thomas v. State*, 277 Ga. App. 88, 90 (625 SE2d 455) (2005) (roadblock unauthorized because corporal on patrol made spur of the moment decision while meeting with other officers at convenience store, and no evidence presented that corporal had any specific authorization to implement roadblock).

It appears from the trial court's order that the court reached the conclusion that Marchetta "made the decision while acting as an officer in the field," focusing solely on the fact that Marchetta's decision was *prompted* by the earlier e-mail of his precinct commander. Indeed, had Marchetta lacked the requisite authority to authorize and implement a checkpoint, it is clear that as an officer in the field, a roadblock premised solely upon the e-mail of the precinct commander would have been wholly noncompliant with the mandate of *LaFontaine*. However, based upon the facts presented here, the precinct commander's e-mail is meaningless but for the fact that it apparently prompted the authorized action by Marchetta to implement a roadblock. Because of the particular facts of this case, wherein Marchetta had the independent supervisory authority to implement

roadblocks, the actions of the precinct commander and the contents of his e-mail are irrelevant to a proper analysis of whether the roadblock authorized by Marchetta was compliant with *LaFontaine*.

Moreover, officers are not precluded as a matter of law from acting simultaneously as a supervisor and a field officer. See *Jacobs*, supra, 308 Ga. App. at 120; *Gonzalez*, supra, 289 Ga. App. at 551; *Hobbs v. State*, 260 Ga. App. 115, 117 (1) (579 SE2d 50) (2003). The trial court therefore erred in concluding as a matter of law that Marchetta was acting as an officer in the field.

2. The trial court also granted Brown's motion to suppress on the ground that the roadblock "was not sufficiently manned as required by *LaFontaine*." But whether the roadblock was sufficiently manned is not among the specific factors enumerated in *LaFontaine*, supra, 269 Ga. at 253, and we find no authority holding that an understaffed roadblock alone is sufficient to demonstrate that a stop was unreasonable under the Fourth Amendment. See, e.g., *Brown v. State*, 245 Ga. App. 706 (1) (538 SE2d 788) (2000) (no Fourth Amendment challenge raised where two officers manned roadblock).

The court, apparently relying on the Cobb County Police Department policy governing checkpoints, concluded that Marchetta could not be the checkpoint supervisor, screener and follow-up investigator. The police department policy, which was admitted at the hearing on the motion to suppress, provides that the approving supervisor should ensure that "[t]here is adequate manpower to safely and efficiently conduct the checkpoint. Normally, the checkpoint supervisor should not act as a screening officer." The policy provides further that "traffic volume will in most cases determine the number of personnel needed for the traffic safety checkpoint," that "[o]fficers will be needed" to screen motorists and conduct follow-up investigations, and at least one additional officer will be needed to stop those motorists who violate the law in the vicinity of the checkpoint or fail to stop at the checkpoint.

Here, Marchetta testified that based upon the size of the roadway and the amount of traffic on the roadway, two officers were sufficient to man the roadblock. And the police department policy does not prohibit a roadblock manned by only two officers; nor does it prohibit an officer from serving more than one role in conducting the roadblock. Moreover, as stated in Division 1, we have held that a supervising officer's participation in a roadblock does not render the roadblock unconstitutional. See *Gonzalez*, supra. The trial court therefore also erred in its conclusion that suppression was required because the roadblock was not sufficiently manned.

Because the trial court erred in its conclusion that the roadblock was illegal as a matter of law, we must reverse the trial court's grant

of Brown's motion to suppress.

*Judgment reversed. Miller, Blackwell and Dillard, JJ., concur. Barnes, P. J., Mikell, P. J., and Adams, J., dissent.*

MIKELL, Presiding Judge, dissenting.

I respectfully dissent. This appeal is governed by *Miller v. State.*[2] In that opinion, the Supreme Court reversed our court's finding and said that we had erred by applying a de novo standard of review. In *Miller*, as in the case at bar, a "clearly erroneous" standard of review applies.[3] As explained by Justice Melton, writing for the majority:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant and their application to this trial court's order would demand that the court's order be affirmed.[4]

In the case at bar, the trial court's ruling was in favor of the defendant, and, as in *Miller*, it should be affirmed.

The majority here, as did the dissenters in *Miller*, goes beyond the trial court's order to pick and choose from the record the facts which it deems important and upon which it would have relied if it had been sitting at nisi prius. Such an approach was expressly rejected by the majority in *Miller*.[5] Testimony not mentioned by the

---

[2] 288 Ga. 286 (702 SE2d 888) (2010).

[3] Id. at 287, n. 1.

[4] (Footnote omitted.) Id. at 286-287, quoting *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[5] Id. at 289 (2). The trier of fact may believe or disbelieve all or any part of the testimony of any witness. See *Massengale v. State*, 264 Ga. 51, 52 (2) (a) (441 SE2d 238) (1994). See generally *State v. Austin*, 310 Ga. App. 814, 822 (1) (714 SE2d 671) (2011) (Mikell, J., concurring specially).

trial court and not relied on by that tribunal, was impliedly discounted.[6] It cannot be seriously contended that there was *no* evidence to support the trial court's ruling. And the applicable standard of review, "clearly erroneous" is, in Georgia, the same as the "any evidence" standard.[7]

The critical factual issue to be decided by the trial court was whether Marchetta, when he decided to have a roadblock, was acting as a supervisor or as a "field officer." The trial court's finding that Marchetta was a field officer was a possible inference from the evidence and hence must be affirmed by us under the rules announced in *Miller* and *Tate*. And all evidence must be construed "most favorably" to upholding the trial court's findings.[8]

The distinction between "field officer" and supervisor is impossible to understand without knowledge of the reasoning of the United States Supreme Court in roadblock and checkpoint cases. Its consistent holding in considering police attempts to screen motor vehicles and drivers, in cases involving all types of checkpoints including DUI screening, Border Patrol immigration checks, driver's license inspections, etc., is to allow these interferences with a citizen's liberty only when the discretion of field officers as to the time, place and duration of the roadblock is as limited as practical.[9] Its fear is that unlimited discretion, indeed any discretion, by field officers will amount to the dreaded and unconstitutional "roving-patrol."[10] Therefore decisions as to the time, place and duration of a roadblock must be made in advance by a supervisor at the executive level, or in the words of Justice O'Connor, the "programmatic" level.[11] This seemingly hairsplitting distinction is required "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions

---

[6] Id.

[7] *Hanson v. Kent*, 263 Ga. 124 (2) (428 SE2d 785) (1993). Accord *Turpin v. Todd*, 271 Ga. 386, 390 (519 SE2d 678) (1999); *Derrer v. Anthony*, 265 Ga. 892, 894 (1) (463 SE2d 690) (1995).

[8] *Miller*, supra at 286 (1), quoting *Tate*, supra at 54 (1).

[9] *Illinois v. Lidster*, 540 U. S. 419, 424 (II) (124 SC 885, 157 LE2d 843) (2004); *City of Indianapolis v. Edmond*, 531 U. S. 32, 42-45 (III) (121 SC 447, 148 LE2d 333) (2000); *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444, 452-453 (110 SC 2481, 110 LE2d 412) (1990); *Delaware v. Prouse*, 440 U. S. 648, 653 (III) (99 SC 1391, 59 LE2d 660) (1979); *United States v. Martinez-Fuerte*, 428 U. S. 543, 557-558 (IV) (B) (96 SC 3074, 49 LE2d 1116) (1976).

[10] The definition of a "roving-patrol," as distinguished from, for example, a "patrol," seems to have been common knowledge among jurists in Washington, D. C., as early as 1973. *Almeida-Sanchez v. United States*, 413 U. S. 266, 268 (93 SC 2535, 37 LE2d 596) (1973). Usage of the phrase has now spread to the hinterland. See, e.g., *Bennett v. State*, 283 Ga. App. 581, 583 (642 SE2d 212) (2007).

[11] *Edmond*, supra at 46 (III).

solely at the unfettered discretion of officers in the field."[12] "[I]n the absence of *record* evidence that the decision to establish the roadblock was made by anyone other than the officers in the field, the roadblock in question has certain characteristics of a roving patrol."[13] As the United States Supreme Court stated on another occasion,

> [t]he location of a fixed [roadblock] is not chosen by officers in the field, but by officials responsible for making overall decisions as to the most effective allocation of limited enforcement resources. We may assume that such officials will be unlikely to locate a [roadblock] where it bears arbitrarily or oppressively on motorists as a class.[14]

Problems have arisen in Georgia because of the loose usage in the precedents of the word "supervisor." The problem is semantic. Most, if not all, field officers have a supervisor. And many Georgia appellate decisions emphasize that the decision was made by a *supervisor* and that the supervisor had the authority to order that the roadblock in question take place.[15] (Of course he or she had that authority. Otherwise the contested roadblock would not have taken place.) The precedents are misleading because power to authorize the roadblock was never an issue and has no constitutional significance. The key issue is whether the supervisor is acting as an "executive level programmatic" official when he or she authorizes — in advance — the roadblock, or whether he or she was then a field officer.

In Georgia, it is in theory possible for a supervisor properly, as an executive, to order the roadblock and then later to participate in it.[16] So a clearer way to phrase the key question is: was the supervisor at the moment he made the decisions about time, place and duration acting as a field officer or as a nonfield officer, thus avoiding the word "supervisor" altogether.[17]

In which role the decision maker was acting at the moment the key decision was made is a question of fact, and one often difficult to

---

[12] (Citations omitted.) *Brown v. Texas*, 443 U. S. 47, 51 (II) (99 SC 2637, 61 LE2d 357) (1979), quoted in *LaFontaine v. State*, 269 Ga. 251, 255 (497 SE2d 367) (1998) (Sears, J., dissenting and concurring specially).

[13] (Punctuation and footnotes omitted; emphasis supplied.) 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 10.8 (d) at 697 (3d ed. 1996).

[14] (Footnote omitted.) *Martinez-Fuerte*, supra at 559 (IV) (B).

[15] *Bennett*, supra at 583; *LaFontaine*, supra at 253-254 (3); *State v. Golden*, 171 Ga. App. 27, 29-30 (318 SE2d 693) (1984).

[16] *Bennett*, supra.

[17] Evidence that the key questions of time, place, and duration were settled back at headquarters in the supervisor's office would be quite persuasive.

discern.[18] When a trial court has made that difficult ruling based on any evidence, we should affirm. The majority is completely correct that the e-mail from Captain Cox is not relevant to the present appeal. And the trial court's finding that the roadblock was undermanned is similarly irrelevant. None of the federal or state precedents mentions adequate staffing as a constitutional requirement.[19]

The bench and bar should be aware that none of this constitutional hairsplitting applies in an emergency. If for example, three escaped convicts are said to be heading north on State Highway 208, or the co-conspirator of a terrorist says his friend is driving a van full of explosives toward a nuclear power plant, or an "Amber" alert includes the abductor's route, or witnesses say that the bank robbers are heading out of town on the road to Statesboro, then of course law enforcement may use the time-honored technique of a roadblock. If the roadblock incidentally nabs a drunk driver or a car reeking of marijuana, by all means arrest the culprit. The roadblock and the arrest will be found by the courts to have been valid and constitutional.

In conclusion, the trial court should be affirmed because it found, after hearing from witnesses, that the person who made the decisions, Marchetta, was acting as a "field officer" and not as a "nonfield officer" at the programmatic level when he made the crucial decisions. We should not second guess the trial court based on a cold record. I would affirm the order suppressing the evidence.

I am authorized to state that Presiding Judge Barnes and Judge Adams join in this dissent.

DECIDED MARCH 26, 2012 — 

*Patrick H. Head, District Attorney, Richele P. Anderson, Anna G. Cross, Assistant District Attorneys*, for appellant.
*John A. Steakley*, for appellee.

---

[18] The gold standard for compliance with the "nonfield officer" standard was the now superceded Cobb County Police standard operating procedure which required an executive official to order the roadblock one week in advance, in writing, specifying the time, place, and duration. The constitution does not require this degree of perfection.

[19] There is a requirement that the "screening officer" be adequately trained, but no mention of the required minimum staffing. Common sense might suggest that having only two officers at the roadblock in question was inadequate. But staffing is an issue of management and supervision, not of the federal or state constitution.