**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 23, 2015**

# In the Court of Appeals of Georgia

A15A0904. MOSS v. THE STATE.                                           BO-035

BOGGS, Judge.

After being stopped at a traffic safety checkpoint, Kyle Moss was charged by accusation with two counts of driving under the influence of alcohol. Moss was found guilty in a bench trial on stipulated facts, and he appeals, asserting as his sole enumeration of error the denial of his motion to suppress. He contends that the State failed to establish that the checkpoint had a valid purpose when viewed at the programmatic level, in accordance with the Georgia Supreme Court's recent decisions in *Williams v. State*, 293 Ga. 883 (750 SE2d 355) (2013), and *Brown v. State*, 293 Ga. 787 (750 SE2d 148) (2013).[1] In denying Moss' motion to suppress, the trial court

---

[1] The checkpoint at which Moss was stopped took place on April 19, 2013. *Williams* and *Brown* were decided on October 21, 2013, and the hearing on Moss' motion to suppress occurred on December 18, 2013.

explicitly found that "[a]t the programmatic level, the testimony indicated that the purpose for the checkpoints is to check licenses, the drivers' conditions, and vehicle registration." Because this finding was supported by some evidence, we affirm.

In *Williams* and *Brown*, supra, both decided on the same day, our Supreme Court held that "the State must show that the law enforcement agency's checkpoint program had an appropriate primary purpose other than ordinary crime control – a purpose examined at that programmatic level, rather than by trying to determine the motives of the supervisor who implemented and the officers who conducted the particular checkpoint at issue. [Cit.]" *Brown*, supra, 293 Ga. at 798-799 (2) (f); see also *Williams*, supra, 293 Ga. at 886-887 (2). With regard to "the primary purpose of the [law enforcement] agency's overall checkpoint program[,]" the State must show that "at that programmatic level . . . the agency has not authorized vehicle checkpoints primarily for general crime control but rather for an appropriately limited purpose like traffic safety." (Citations, punctuation, and footnote omitted.) *Brown*, supra, 293 Ga. at 798-799 (2) (e). *Brown* also notes the appropriate standard of review: if the trial court's factual determination was supported by some evidence and therefore not clearly erroneous, the court's order on the motion to suppress should be affirmed. Id.

2

at 788; see also *Williams*, supra, 293 Ga. at 889 (2) (a) ("We must defer to that finding if there is any evidence in the record to support it." [Cit.]")

It is not in dispute that the Cobb County Police Department has a detailed written policy governing permissible purposes for checkpoints. The policy was discussed at considerable length at the hearing by counsel, the trial court, and the witnesses, and Moss' counsel referred to it by its section number. Moreover, *Brown*, supra, 293 Ga. at 788 (1) (a), and that case's earlier appearance before this court, *State v. Brown*, 315 Ga. App. 154, 159 (726 SE2d 654) (2012), also addressed a Cobb County police roadblock and quoted extensively from the text of the provision in question. *Brown* was cited repeatedly in the hearing by the parties and the trial court. But the State failed to identify or introduce a copy of the written policy into evidence at the hearing on the motion to suppress, and it is not part of the record before us.[2]

But even in the absence of a copy of the written policy, as our Supreme Court noted in *Williams*, supra:

---

[2]In its brief, the State asserts the contents of the policy, citing *Brown*. In some circumstances, "this Court may take judicial notice of the records of other cases before this Court, in the interest of doing substantial justice and as a means of judicial economy," *Davis v. State*, 287 Ga. 414, 415 n.1 (696 SE2d 644) (2010). But under both current and former law, a court must explicitly do so. See OCGA § 24-2-201; *Graves v. State*, 269 Ga. 772, 775 (4) (a) (504 SE2d 679) (1998), overruled on other grounds, *Jones v. State*, 272 Ga. 900, 903(2) n.13 (537 SE2d 80) (2000).

[t]he Constitution . . . does not mandate that a law enforcement agency delineate its checkpoint program in writing (although a written policy certainly provides clearer guidance to the agency's officers and stronger proof for reviewing courts). We therefore must also consider whether the State offered any other evidence that the primary purpose of the BCSO's vehicle roadblock program was properly limited, such as testimony about restrictions being imposed through verbal orders or training or *records showing that checkpoints have been done only for an appropriate purpose*.

(Emphasis supplied.) 293 Ga. at 892 (3) (b). See also id. at 893 (3) (b) n. 5 (State may show that a "checkpoint program has an appropriate purpose other than general crime control.)"

In *Williams*, no such testimony or records were offered into evidence.[3] Here, however, the State introduced additional testimony and documents to show that the primary purpose of the county's checkpoint program was properly limited on a programmatic level. A two-page document titled "Cobb County Police Department/ Uniform Division/ Traffic Services Unit/ Safety Checkpoint Log" was identified and

---

[3]In *Williams*, the "two-sentence vehicle roadblock policy . . . authorize[d] 'general roadblocks which serve legitimate law enforcement purposes,' without limitation," id. at 892 (3) (b), and no testimony or other evidence was presented that the programmatic policy "*excluded* checkpoints for purposes of general crime control." Id.

introduced into evidence. This document includes pre-printed checklists for numerous details of checkpoint planning and operation, including "Site Selection (Method/Reason)" with a series of boxes to be checked as applicable including "Crash Analysis Report," "Sobriety Checkpoint," and "Other (Describe in Summary)." The "Other" box was checked and the summary reads: "Checkpoint established to ensure driver's were complying with all applicable driver's license and insurance requirements. Any other violations of law discovered during this encounter was investigated and handled by the officers. [Sic.]" The road sergeant who implemented the checkpoint testified that he completed the forms in the course of supervising the checkpoint. He acknowledged the county policy governing checkpoints and specifically section 5.19 of the police department manual, but added that it had "been a while" since he had read it.

Asked about the primary purpose of the checkpoint, the sergeant testified that in the absence of specialty training, the county's road officers' "primary, sole purpose in doing a checkpoint would be just to check for, like I say, license, insurance. In fact, we don't have any – we don't do specialized checkpoints." He reiterated on cross-examination that "[t]hat's the main purpose we do checkpoints for as road officers" and that "[o]ur sole purpose . . . is to set it up and do driver's license and insurance."

5

He also testified that he had no "input in or authority over the policy." The sergeant's testimony that the *sole* purpose for which road officers were authorized to set up a checkpoint was driver's licenses and insurance necessary excludes other purposes, including those of general crime control.

The State therefore did present *some* evidence supporting the trial court's conclusion. The log itself is an official record at the programmatic level, "showing that checkpoints have been done only for an appropriate purpose." *Williams*, supra, 293 Ga. at 892 (3) (b). Compare *Armentrout v. State*, 332 Ga. App. 370, 374 (1) (772 SE2d 817) (2015) ("there was no testimony nor any written evidence admitted regarding the . . . checkpoint policy or program as a whole.") The sergeant's testimony regarding the limitation of road officers' purposes for checkpoints, taken in conjunction with the log and the limitations shown there, authorized the trial court to conclude that at the programmatic level, the Cobb County Police Department authorizes checkpoints for the purpose of checking licenses and insurance, and not for general crime control. While we agree with our Supreme Court that "a written policy certainly provides clearer guidance to the agency's officers and stronger proof for reviewing courts," *Williams*, supra, 293 Ga. at 892 (2) (b), the evidence was sufficient to support the trial court's ruling.

*Judgment affirmed. Doyle, C. J. and Phipps, P. J., concur.*