BOGGS, Judge,
dissenting.
I disagree with the majority’s conclusion in Division 2 that the roadblock satisfied constitutional requirements, and therefore respectfully dissent.
The majority holds that the trial court was authorized to conclude that the State presented adequate proof that the roadblock program, when viewed at the programmatic level, had an appropriate primary purpose other than general crime control. But that is only part of the analysis. Our courts “refer to the ‘Edmond[2\ requirement’ or the ‘appropriate primary purpose requirement’ — with ‘appropriate’ understood to mean a primary purpose that is both legitimate for law enforcement to pursue and can be distinguished from general crime control.” (Punctuation omitted; emphasis in original and supplied.) Brown v. State, 293 Ga. 787, 795 (2) (c) n. 9 (750 SE2d 148) (2013).
Here, the record reveals that the Georgia Department of Public Safety’s (“GPS”) written manual did not state a primary purpose on *618 the programmatic level. The manual provides that “fsjupervisors will schedule road checks and will identify a primary purpose for the road check such as: to verify driver licenses, insurance, vehicle registration, and vehicle equipment.” (Emphasis supplied.) This is inadequate to satisfy Edmond because (1) a supervisor determines the primary purpose rather than the GPS at the programmatic level, (2) the primary purpose is determined on a case-by-case basis because it is identified upon the decision to implement a roadblock (“will schedule road checks and will identify”), and (3) the manual provides only an example of a primary purpose (“such as”), and therefore it fails to state definitively and with limitation the primary purpose of the roadblock program. See, e.g., Williams v. State, 293 Ga. 883, 892 (3) (b) (750 SE2d 355) (2013) (the “written checkpoint policy, viewed properly at the programmatic level — what checkpoints are authorized by the policy, rather than what the purpose was for any specific checkpoint — is not limited as the Constitution requires”). In sum, the policy manual did not provide a “primary purpose of the checkpoint program.” (Footnote omitted; emphasis in original.) Brown, supra, 293 Ga. at 796 (2) (d).
To the extent the trial court found in its written order that “the road block was conducted pursuant to the Georgia State Patrol 2010 Policy and was a programmatic approach,” it erred. While the roadblock may have been conducted pursuant to the 2010 policy manual, as explained above, the manual does not set forth GPS’s policy on the programmatic level. The trial court found further that “[t]raffle control is a specific element of that policy” and makes reference to the log form used by the lieutenant for the specific roadblock here. The lieutenant testified that the log form was used for every roadblock. While I agree with the majority (and as the trial court found in its oral ruling) that this log form is some evidence of GPS’s programmatic level roadblock policy, the form itself is open-ended. It contains a space for “other” followed by a blank line, and the lieutenant explained that he had been instructed to use that option only when looking for a dangerous felon, even though “[ljocation of dangerous felon” was already specifically listed as an option on the form, a fact which the majority ignores.[3] There was no other evidence showing that “Other” is limited to a proper purpose. Although the lieutenant testified a *619 roadblock would not be permitted for detecting or deterring crime generally, this evidence does not foreclose the possibility that the GPS could supply another improper purpose under “Other.” Testimony about the purposes for which the roadblock could not be used, does not equate to testimony about the purpose for which the roadblock could be used. Edmond prohibits purposes that are “ultimately indistinguishable from the general interest in crime control.” Edmond, supra, 531 U. S. at 44 (III). In the absence of an explanation of what the “other” purposes may be, we cannot determine whether or not those other purposes are in fact indistinguishable from the general interest in crime control. Just as the trial court stated in its oral ruling that “there could be many other specific reasons that are not random investigation for criminal conduct,” there could also be many other specific reasons that are random investigation for criminal conduct. Without evidence that any programmatic level policy was properly identified and limited, the Edmond requirement is not satisfied. As explained in Brown, Edmond requires a showing of a primary purpose that is both legitimate for law enforcement to pursue and can be distinguished from general crime control. Brown, supra, 293 Ga. at 795 (2) (c) n. 9.
The trial court orally ruled:
I believe that in addition to the specific route concerned involved in a dangerous criminal that there could be many other specific reasons that are not random investigation for criminal conduct. None of those are involved in this case, so it’s not necessary to make that opinion. ... If the policy had specifically addressed and allowed things that clearly are not based upon specific purposes and information, then I would be critical of it, but it does not do so.
Thus, the court found that because this particular roadblock was properly limited, there was no need to provide an opinion as to other purposes not involved in this case. But as explained in Williams, a finding that a particular checkpoint has a primary purpose other than ordinary crime control is not sufficient to satisfy Edmond. Supra, 293 Ga. at 891 (3) (b). The court must conduct an analysis of the programmatic level policy.
The State and the majority cite Moss v. State, 333 Ga. App. 875 (777 SE2d 709) (2015). But the facts in Moss are distinguishable. There, we held that although the written policy was not in the record before us, the State presented some evidence supporting the trial court’s finding that the primary purpose at the programmatic level was properly limited. Id. at 877-878. Specifically, the sergeant’s *620 testimony about the sole purpose for checkpoints, in conjunction with the log form used for the checkpoint in question, satisfied the requirement. The log form in Moss stated under the “Other” box that the checkpoint was established “to ensure driver’s [sic] were complying with all applicable driver’s license and insurance requirements.” Id. Here, however, although an approval form similar to the log in Moss was admitted into evidence, there was no explanation given for the purpose of “Other” outside of the one given by the lieutenant referring to a purpose already listed. He referred only to the written policy: “we adhere to the policy and directives that were given to us.” And when asked “what are the possible — not necessarily in this roadblock, but in general, what are the possible reasons for a roadblock that you were able to check?” the lieutenant repeated the reasons listed on the approval form he filled out for this particular checkpoint. He also responded that there was no verbal policy, only the written policy, and that the written policy was “[their] guidance.” But again, the written manual provided no properly limited programmatic level roadblock policy.
The GPS policy manual on its face does not provide a primary purpose on the programmatic level, and any evidence of the programmatic level purpose provided by the log form was not properly limited. United States Supreme Court and Supreme Court of Georgia precedent requires us to hold that the State failed to satisfy the requirement of Edmond, supra. I would therefore conclude that the trial court erred in denying Kettle’s motion to suppress.[4]
I am authorized to state that Presiding Judge Barnes and Judge McFadden join in this dissent.
*621 Decided November 18, 2016
James W. Smith, for appellant.
D. Parks White, District Attorney, K. Nicole Roddenbery, Assistant District Attorney, for appellee.

 City of Indianapolis v. Edmond, 531 U. S. 32 (121 SCt 447, 148 LE2d 333) (2000).

 The majority states that the lieutenant’s explanation for the use of “other” was “limited to describing the details of a specific search for a violent felon.” But this is an overstatement of his testimony. The lieutenant testified: “The only ‘other’ that I can think of was, you know, when we are looking for Jamie Hood [a fugitive] or a violent felon.” He explained further, “It’s the only time that I ever used ‘other,’ and the only time I was ever instructed to use ‘other’ was in times of looking for dangerous felon.”

 I note that in June 2014, following the Supreme Court of Georgia’s 2013 decisions in Brown and Williams, and prior to the 2015 hearing on Kettle’s motion to suppress, the GPS revised its policy manual. The manual now provides under “Roadblocks”:
The supervisor must implement the roadblock for a legitimate primary purpose, which shall be to monitor and check driver’s licenses, driver condition, vehicle registration, vehicle equipment and other requirements of the Georgia motor vehicle and traffic code or to locate a suspected criminal likely to be in the area. The primary purpose shall not be general crime detection .
(Emphasis supplied.) The “Policy” statement was also revised and now provides:
The Georgia Department of Public Safety shall conduct roadblocks to protect the citizens of the State of Georgia and to monitor and check driver’s licenses, driver condition, vehicle registrations, vehicle equipment and other requirements of the Georgia motor vehicle and traffic code and to locate a suspected criminal likely to be in the area. Roadblocks shall be conducted in a manner that safely maximizes available personnel, promotes highway safety and provides the greatest public benefit. Roadblocks shall not be established for the general purpose of crime control or deterrence.
(Emphasis supplied.)